[Civ. No. 4460. Second Appellate District, Division Two.—February 9, 1924.]

## H. GEORGE CREASE et al., Respondents, v. EDWIN A. JARRELL et al., Appellants.

[1] EVIDENCE—FINDINGS—APPEAL.—The sufficiency of evidence to establish a given fact, even where the law requires proof of that fact to be clear and convincing, is primarily a question for the trial court, and if there is substantial evidence to support the conclusion reached below, the finding is not open to review on appeal.

[2] EASEMENTS—USE OF ALLEY—EVIDENCE—PAYMENT OF TAXES—INVALID SUBSEQUENT CONDITIONS. — In this action for an injunction to prevent the closing of an alley, the evidence, showing, among other things, that the passageway in question was laid out, lots bordering thereon were sold, and rights therein accrued long prior to any question having arisen with respect to the payment of taxes, assessments, and expenses, was sufficient to support the trial court's finding of the existence of an easement in favor of the abutting owners and their successors in interest, and such easement could not be divested by subsequently asserted conditions in a writing between a few of the parties interested.

[3] ID.—DUTY TO KEEP IN REPAIR—AGREEMENT OF MINORITY—VESTED RIGHTS.—It is the duty of the owners of an easement to keep it in repair, and a minority of several property owners are not authorized to speak for all, and by the execution of a private agreement deprive them of vested rights by attempting to make their interest dependent upon the performance of a legal duty.

[4] ID.—MERGER OF DOMINANT AND SERVIENT ESTATES—DESTRUCTION OF EASEMENT.—Where a block of land is subdivided into lots abutting on an alleyway, and lots therein are sold in such manner as to create a right of ingress and egress by means of such alleyway, the subsequent acquisition by a party of one lot abutting on such alley and of the legal title to such alley will not effect a merger of the dominant and servient estates, so as to destroy the easement theretofore created in favor of other abutting lot owners.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. A. Klein and Dorris & Henderson for Appellants.

Emmons, Aldrich & Heck, R. B. Lambert and J. K. Lilly for Respondents.

CRAIG, J.—The subject matter of this action is a strip of real property situate in block 24½ of the Southern Addition in the city of Bakersfield, approximately twenty-five feet wide, running northerly from Blanche Street about 150 feet, and thence westerly at right angles the same distance, which it is alleged was dedicated to the use of abutting property owners as an alley more than six years prior to the commencement of these proceedings in April, 1920. On or about March 17th of that year the appellants closed the passageway with fences and prepared the ground for crops, preventing respondents from using the same, whereupon the latter instituted this suit and prayed a decree that it be adjudged an alley by dedication, and an injunction against interference with its use as a passageway by owners of abutting lots. Appellants denied the dedication or existence of an easement, and alleged that respondents had had a mere permissive use of the property, conditioned upon the payment by each of a proportionate share of taxes, assessments and upkeep expenses incident to the maintenance of the alley as a driveway; and that it had previously been expressly agreed that such use might be refused upon failure to comply with these requirements; that appellants were legally justified in closing the driveway to respondents, because the latter had not paid any portion of said expenses, and that a predecessor in interest, the respondent Union Lumber Company, on or about the twenty-third day of July, 1918, had terminated the privileges of ingress and egress in the property described.

The trial court gave judgment for plaintiffs, and defendants appeal therefrom on the grounds of insufficient evidence of original ownership of Union Lumber Company, of the existence of an easement or right of way, or that a trust was created by the deed hereinafter mentioned, and errors are assigned as to rulings upon the evidence.

It appears from said complaint, and the court found, that all the parties are owners of interests in property situate in blocks 24 and 24½, and that all except the lumber company are in possession and use thereof, which said properties abut on the strip of land in controversy; that the

lumber company was the original owner of the land in suit, from whom all the parties hereto derived title, and that on January 23, 1918, said company executed a deed in trust to Josiah A. Engle and wife, for appellants and respondents, of said property, providing that it should be used as an alley, and should be kept open, but that such use might be refused to any adjoining property owner declining to pay the proportional share of any tax, assessment or expense levied against the property. October 11, 1918, the Engles executed to all owners of property in block 24½ a written "Declaration," purporting to convey to them the right to use said strip of land for driveway purposes, and embodying similar requirements.

Subsequent to the execution of said declaration, and on December 1, 1919, the Engles executed and delivered to Edwin A. Jarrell and wife, appellants herein, an agreement for the sale of a 37½-foot frontage in said block 24½, 125 feet deep, which included a portion of the property involved in this suit. Appellants entered into possession, and now contend, that they are owners of all the property in controversy, and that as successors in interest Josiah A. Engle and wife they have the right to erect the barricades heretofore mentioned, "after the plaintiffs had failed, refused and neglected and had declared their unwillingness to pay the taxes, assessments, charges and expenses in connection with the maintenance of said alley." Respondents allege in their first cause of action that for more than five years prior to the commencement of this action all the parties (except the lumber company) and their predecessors in interest had been using said driveway without let or hindrance, and that the same is necessary to the free use and occupation of their respective premises. It is further alleged, and the court found, that block 24½ was delineated upon a map recorded in the office of the county recorder November 25, 1898, and that one C. D. Brown, the then owner, laid out said property, and the alley, and that abutting lots of these parties were sold with the agreement that said driveway should be maintained as an incident to the appurtenant properties. Appellants deny these allegations, and assert that they have since 1919 laid out large sums of money in improving and fencing this property, relying upon representations of respondents Persel and the lumber company that none of the

respondents had any right to its use on account of the afore-said defaults, and that respondents Crease and the predecessor in interest of respondents Hershey had for valuable considerations released all their right, title, and interest therein.

[1] It is settled that the sufficiency of evidence to establish a given fact, even where the law requires proof of that fact to be clear and convincing, is primarily a question for the trial court, and if there is substantial evidence to support the conclusion reached below, the finding is not open to review on appeal. (*Steinberger* v. *Young,* 175 Cal. 81 [165 Pac. 432]; *Spreckels* v. *State,* 30 Cal. App. 363 [158 Pac. 549]; *Tucker* v. *Pacific Elec. Ry. Co.,* 174 Cal. 42 [161 Pac. 1147]; *Rolland* v. *Porterfield,* 183 Cal. 466 [191 Pac. 913].) Brown testified that in 1908 he and one Howard bought a portion of this block, which they subdivided and built up after they had purchased a portion of block 24; that they platted block 24½ into six pieces, and cut an alley in a northerly direction from Blanche Street to the back end of their lot and then westerly to the westerly end of their property; that they sold all the lots to various persons, whom he named, and thereafter by a blank deed sold the alley property to the Union Lumber Company, who later bought two of the lots; that at the westerly line of the alley there was a fence along the line of a walk, leaving space to get into the garage. He stated that Crease's fence was probably built in 1912, and that other lot owners had maintained fences on their back lines for a long time; the fence at the rear of the Engle lot (appellants' property) marked the boundary to the alley. Stone testified that when he went there the alley was in use by delivery boys, garbage men and others, and that he used it until obstructed by appellants; that it was in daily use as a driveway. Brown when recalled testified that when he subdivided he used a pencil sketch showing the lots and the alley, and that he told purchasers that this alley gave them a back entrance to their property; that he gave them to understand that an alley had been dedicated to the people who bought lots; that subsequently he went to the Union Lumber Company, to Crease and to Engle and told them that this property was being assessed to him, but that he had been sold out for some time, and did not intend to continue paying the taxes; that he would arrange so that they could take title if they

would keep the alley open, and that on August 23, 1916, an agreement was entered into by the lumber company, Crease, and Engle, reciting that the lumber company had foreclosed a mortgage on the alley property, and that in consideration of Crease and Engle paying the taxes and assessments then existing as liens thereon, the company would, upon obtaining a deed, convey the premises to them, provided that such deed should contain a covenant that the property be used as an alley, and that it should be kept open. It was further testified that Brown insisted previously to the execution of such agreement that "all the property owners should share alike as to the expenses and we put this clause in this agreement so that a particular person who would not pay his portion would be refused the use of the alley, but it should not be closed to the public or to the people who would pay it"; that he intended that if two or more people held it for the adjoining property owners, they should have the right to refuse any particular one the right to use it if he would not pay his share of the expenses. Witness Sherzer of the lumber company testified that when he became acquainted with the property he knew there was an alley to the adjoining lots; that he had told appellants that while he had given Engle a deed to the alley, he believed it was not a deed, because he had considered that the company was nothing more than a trustee for all the people in the alley, and merely desired that the matter be settled so that someone else would attend to the taxes; that he was interested in seeing that Stone always had an easement. He testified that Engle at one time asked him to accept the property back, and to redeed it to Engle without the alley provision, but that he replied that the company then would have no access to its property, whereupon Engle agreed to file a declaration that it would be used for alley purposes, which was done. Legal title to the *ground* still is in the Engles.

[2] From the foregoing detail of the evidence it will be noted that this passageway was laid out, lots bordering thereon were sold, and rights therein accrued long prior to the suggestion of any contingency such as appellants here assert. Sherzer states that he never considered he had any greater right to the alley than anyone else; that the property owners were to be served by the alley when it was first laid out, and that he told Engle that he would get

into a lawsuit if he insisted on closing it. We are of opinion
that an easement was created by Brown in favor of abutting
property owners and their successors in interest which could
not be divested by subsequently asserted conditions in a
writing between a few of the parties interested. (*Anderson*
v. *Citizens etc. Co.,* 185 Cal. 386 [197 Pac. 113].) **[3]** It
is the duty of the owners of an easement to keep it in repair
(*Bean* v. *Stoneman,* 104 Cal. 49 [37 Pac. 777, 38 Pac. 39];
*Durfee* v. *Garvey,* 78 Cal. 546 [21 Pac. 302]; *Ware* v. *Wal-
ker,* 70 Cal. 591 [12 Pac. 475]), so that a minority of several
property owners would not be authorized to speak for all
and by the execution of a private agreement deprive them
of vested rights by attempting to make their interest de-
pendent upon the performance of a legal duty. (*Knoch* v.
*Hatzlip,* 163 Cal. 146 [124 Pac. 998].) In *Petitpierre* v.
*McGuire,* 155 Cal. 242 [100 Pac. 690], it was held that when
the owner of a small tract of land subdivides the same into
lots, leaving a street, avenue, way, court, or cul-de-sac be-
tween them, opening on a public street, and sells such lots
as bounding on the same, he covenants to his grantees or
their successors that it is such, and they are entitled to the
use thereof as an easement or right of way for purposes of
travel, light and air, and as a means of ingress and egress
to their respective lots, and the grantor will not thereafter
be heard to deny the same against a grantee or his succes-
sors. The court there said: "Upon the facts stated, the case
appears to fall within the well-settled rule that where one
lays out a tract of land owned by him into lots and makes
a plan thereof showing streets, and sells, according to such
plan, lots as bounding on such streets without any limitation,
he irrevocably devotes such portions marked as streets, so
far as the grantees and their successors are concerned, to use
as streets. It can make no difference that the tract so sub-
divided is small, consisting as here of only one lot two hun-
dred and seventy-five by one hundred feet. (*Stone* v. *Brooks,*
35 Cal. 489), or that the street shown is a mere cul-de-sac."
*San Leandro* v. *Le Breton,* 72 Cal. 170 [13 Pac. 405], is to
the same effect.

**[4]** Appellants pronounce the acquisition by the lumber
company of the alley property and one lot in block 24½ a
merger of dominant and servient estates, and thus seek to
establish extinguishment of the servient tenement under the

provisions of section 811 of the Civil Code. Had the lumber company acquired title to all the property, enjoying an abutting owner's rights in the use of the alley, together with the way itself, a merger could not successfully have been denied; but the ownershp of title to a single lot and to the ground upon which a right of way exists cannot be said to destroy the easement created in favor of all other adjoining lots of respondents which were originally laid out and sold with this benefit attached as a part, at least, of the consideration. However, had the lumber company at one time owned the alley property and all abutting lots, devoting the former to driveway purposes, and subsequently conveying the adjoining lots to the present owners, the case would be the same, since "where the owner of two tenements sells one of them, or the owner of the entire estate sells a portion of it, the purchaser takes the tenement or portion sold with all the benefits and with all the burdens that appear at the time of the sale to belong to it as between it and the property which the vendor retains." (*Jersey Farm Co.* v. *Atlanta Realty Co.,* 164 Cal. 415 [129 Pac. 594].)

It will be unnecessary to consider other points presented by appellants, since the theory upon which this opinion is written renders their decision immaterial. This is particularly true of the objections to the court's rulings upon the introduction of evidence, since all of the evidence to which objections were made would necessarily be admissible upon the theory of the case outlined in this opinion. We find no material inconsistency in the findings which, being sustained by the evidence, as we have indicated, authorize the judgment rendered.

The judgment is affirmed.

Finlayson, P. J., and Works, J., concurred.