SALSMAN, J.
 

 This is an appeal by Joseph B. Schaefer and Margaret Terry Schaefer from a judgment of the superior court in Sonoma County, a portion of which declared that appellants’ lands were subject to an implied easement in favor of respondents Joseph P. Piazza, Jr., Lena Piazza, Ralph C. Hardisty and Jeannette Hardisty. The implied easement found entitles respondents to maintain a pipeline across appellants’ lands to take water for domestic purposes from a lake on the Schaefer property.
 

 • We attach to our opinion a copy of appellants’ Exhibit B-7, a diagram helpful in understanding the location of the various parcels of land involved in this lawsuit. As the diagram indicates, Salmon Creek Road approaches Tanner Creek Road from the west at a 90 degree angle. At the intersection. Tanner Creek Road ends and Salmon Creek Road veers south, then curves gently to the east, paralleling the north bank of Salmon Creek.
 

 The parties to this action own seven separate parcels of land shown on the diagram. The ranch is now owned by appellants. In 1938, the first year in which the lands over which the easement was implied were held in common ownership, the ranch was owned by one Gallagher. Gallagher conveyed it to
 
 *327
 
 Penry in 1945, and Penry conveyed it to appellants in 1962. The ranch is bounded on the east by Tanner Creek Road. Its southern boundary is considerably north of Lot 1.
 

 Within the boundaries of the ranch is located a once-separate parcel known as the lake property, which includes the lake and some land immediately surrounding it. In 1938, Gallagher carved the lake property out of the ranch and conveyed it to the Bodega Creamery. Included in this conveyance was a 6-foot recorded easement running south from the lake to the north bank of Salmon Creek. The easement appears on the diagram as a shaded line immediately west of Tanner Creek Road and Salmon Creek Road. Bodega Creamery held title to the lake property and the recorded easement until 1951, when it conveyed them to Don Albini together with Lots 1 and 2. Albini conveyed these holdings to Meredith Fisheries in 1953, retaining Lot 2. In 1962, Penry purchased the lake and easement and immediately re-sold them to appellants together with the ranch.
 

 When Bodega acquired the lake property and the easement from Gallegher in 1938 it also owned Lots 1, 2, 3 and 5, located in the elbow of Salmon Creek Road as it curves from south to east. Lot 5 is located directly across Salmon Creek Road from Lot 3. There is no Lot 4. Lots 3 and 5 have always heen owned together.
 

 In 1938, Bodega Creamery’s principal source of water was the lake on appellants’ ranch. A pipe extended from a dam and a spring by the lake down the recorded easement to the north bank of Salmon Creek. The creamery, located on Lot 1, pumped water from a sump in the creekbed to water tanks on Lot 1. From the tanks, underground pipes fed the creamery plant on Lot 1, dwellings on Lots 2 and 3, and a garage structure on Lot 5.
 

 Between 1940 and 1944, because more water was needed for its operations, Bodega Creamery improved the dam site on the lake and laid a new pipe underground along the 6-foot easement to a point 75 to 100 yards north of Salmon Creek, directly across from Lot 1. At that point the pipe veered east under Salmon Creek Road, surfacing at the water tanks. Since its completion this system has operated continuously as the exclusive source of water for Lots 1, 2, 3 and 5.
 

 In 1948, Bodega conveyed Lots 3 and 5 to respondents’ predecessors in interest, the Chenowiths. In 1951, Bodega conveyed Lots 1 and 2, together with the lake and recorded easement, to Don Albini. Two years later Albini conveyed the
 
 *328
 
 lake, easement and Lot 1 to Meredith Fisheries. Albini sold Lot 2 to respondents Hardisty in 1958. In 1962, when appellants bought the ranch from Penry, Penry also bought Lot 1, the lake, and the easement from Meredith Fisheries and conveyed them to appellants. Penry then conveyed Lot 1 to 0. K. May and Bay May, who assert no rights in this action. Thus at present appellants own the ranch, lake and the easement. The ownership of Lot 1 is not in dispute. Bespondents Hardisty own Lot 2, and respondents Piazza own Lots 3 and 5.
 

 In enjoining appellants from interfering with the water flow from the lake to Lots 2, 3 and 5, the trial court determined that an easement in favor of respondents should be implied in the grant from Bodega Creamery of Lots 3 and 5 to respondents’ predecessors in interest in 1948, and in the subsequent grant separating Lot 2 from the lake and easement. The trial court further determined that such implied easement was not extinguished as to Lots 2, 3 and 5 by the uniting of title to the ranch property, the lake, the recorded easement and Lot 1 in Penry in 1962. The issue on appeal is the propriety of this determination and the validity of the judgment which rests upon it.
 

 We think it clear from the evidence in this case that respondents enjoy an easement by implied grant for the purpose of obtaining a supply of water for domestic purposes from the lake on appellants’ ranch. The implication of easements is controlled by Civil Code section 1104, which provides: “A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed.” (See
 
 Fristoe
 
 v.
 
 Drapeau,
 
 35 Cal.2d 5, 8 [215 P.2d 729];
 
 Silveira
 
 v.
 
 Smith,
 
 198 Cal. 510 [246 P. 58];
 
 Fischer
 
 v.
 
 Hendler,
 
 49 Cal.App.2d 319, 322 [121 P.2d 792].)
 

 The purpose of the doctrine of implied easements is to give effect to the intentions of the parties, as shown by all of the facts and circumstances of the case.
 
 (Fristoe
 
 v.
 
 Drapeau, supra,
 
 35 Cal.2d 5, 8.) In
 
 Fischer
 
 v.
 
 Hendler, supra,
 
 49 Cal.App.2d 319, 322, the court declared the following factors essential to the creation of an easement by implied grant:
 
 “
 
 (1) A separation of the title; (2) before the separation • takes place the use which gives rise to the easement shall have
 
 *329
 
 been so long continued and so obvious as to show that it was intended to be permanent; and (3) the easement shall be reasonably necessary to the beneficial enjoyment of the land granted.” Here the trial court found all the essential elements of an implied easement present in the evidence and so declared by its judgment.
 

 Appellants’ principal contention is that before an easement by implied grant may arise there must be a separation from common ownership of
 
 adjoining and contiguous
 
 parcels of land. In support of this argument appellants cite such cases as
 
 Rothschild
 
 v.
 
 Wolf,
 
 20 Cal.2d 17 [123 P.2d 483, 154 A.L.R. 75];
 
 Jersey Farm Co.
 
 v.
 
 Atlanta Realty Co.,
 
 164 Cal. 412 [129 P. 593];
 
 Jones
 
 v.
 
 Saunders,
 
 138 Cal. 405 [71 P. 506] ;
 
 Grimmesey
 
 v.
 
 Kirtlan,
 
 93 Cal.App. 658 [270 P. 243], as well as other cases where implied easements were claimed to result from the division of adjoining parcels of land. Appellants also cite Restatement of Property, section 474, and 2 Witkin, Summary of California Law (1960) page 1023. Appellants then argue that since Lot 1 was separated from the easement by Salmon Creek Road and from the lake and ranch by a great deal of intervening land, there has been no separation of adjoining and contiguous parcels, and therefore no easement may be implied.
 

 We cannot accept this narrow view of the law. It is true that in most of the cases where implied easements were claimed there was a division of adjoining and contiguous parcels of land. It does not follow, however, that no implied easement may ever arise in the grant of non-contiguous lands. The facts of this case clearly command the implication of an easement for a domestic supply of water from the lake through the pipeline to Lot 1 and thence to respondents’ lands. It was undoubtedly the intention of the parties when Lots 2, 3 and 5 were separated to preserve the water rights of those lots, and as we have seen, the realization of the intention of the parties is an important objective of the law of implied easements. The fact that Salmon Creek Road separates Lot 1 as well as Lots 2, 3 and 5 from the lake and the recorded easement is not fatal to the implication of an easement in favor of Lots 2, 3 and 5.
 

 The view we express is not without support, despite the fact that most of the decided cases deal with commonly owned tracts divided into two or more contiguous parcels. Thus, in
 
 Silveira
 
 v.
 
 Smith, supra,
 
 198 Cal. 510, an easement to use a private road across the servient tenement was implied in favor
 
 *330
 
 of three dominant tenements, although a public roadway separated the dominant and servient tenements. The court did “not perceive any particular merit” in the contention that the separation of the parcels by a highway 11 militates against the existence of any such easement. ...”
 
 (Id.
 
 at p. 518.)
 

 Appellants next argue that respondents’ use was not so long continued and obvious as to show it was intended to be permanent. It must be remembered that the use critical here is the use made of the water in 1948 and 1953 when Lots 3 and 5 and Lot 2 respectively were severed from the lake and easement. It is the use made before the separation of title that controls.
 
 (Fischer
 
 v.
 
 Hendler, supra,
 
 49 Cal.App.2d 319, 322.) The trial court found that the water system was obvious, permanent, and functioning at the time of separation of title, and the evidence in the record supports that finding. The Bodega Creamery built and completed the system by 1944 to supply the entire operation of the creamery itself as well as the two houses. The system has functioned continuously ever since. The inference is reasonable—if not compelling—that when Bodega conveyed Lots 3 and 5 it intended, as the grantees must have understood, to continue the existing water supply. Whether the use involved is sufficiently apparent is a matter for the determination of the trial court and will not be disturbed if supported by substantial evidence.
 
 (Rubio Canon etc. Assn.
 
 v.
 
 Everett,
 
 154 Cal. 29, 35 [96 P. 811].)
 

 The trial court further found that appellants had constructive notice of the water supply furnished to Lots 2, 3 and 5. Appellants contend that the evidence does not support this finding. They argue that there was nothing obvious or visible to them concerning respondents’ implied easement when they purchased the ranch in 1962, and hence that their lands are free of the easement.
 

 We think the superior court’s finding of notice is supported by the evidence. When appellants were negotiating to purchase the ranch they were aware of the fact that their vendor, Penry, did not own the lake or the recorded easement. Penry therefore purchased them and conveyed them to appellants in addition to the ranch. They must therefore have been aware of the fact that water from the lake was transported to the creamery property, stored in tanks, and then pumped through pipes leading to Lots 2, 3 and 5. These facts were sufficient to put appellants upon inquiry as to the rights of others in the water system and water supply. But even if appellants did not have actual notice of respondents’ use of the water, and even if the facts apparent to appellants at the
 
 *331
 
 time of the purchase were not sufficient to put them on notice of respondents’ rights, respondents should not suffer. Appellants’ good faith cannot destroy respondents’ rights, which were implied in the grants separating their lots from the lake and easement in 1948 and 1953.
 

 Finally appellants contend that water from their property is not reasonably necessary for use on respondents’ property. The trial court found in substance that the only source of water for respondents was the lake on appellants’.ranch, and that the lake source was reasonably necessary for the use and enjoyment of Lots 2, 3 and 5. The court’s finding is fully supported by the evidence. There was evidence that, while no wells had been drilled on Lots 1, 2, 3 or 5, efforts had been made to drill wells and to find water on property in the same vicinity and that these efforts had failed.
 

 Respondents were not bound to show that the lake on appellants’ ranch' was the only possible source of a supply of water. They were only required to show that the lake source was reasonably necessary to the beneficial enjoyment of their lands. The trial court had before it evidence that, when the Bodega Creamery needed a greater supply of water it acquired the lake and easement on the ranch appellants have now acquired and made improvements at the lake site for the purpose of impounding water. There was evidence also that wells drilled on land near that of respondents’ produced no water. From this evidence the court could infer that the lake was the most reliable source of a steady supply of water and that it was reasonably necessary for the use and enjoyment of respondents’ property.
 

 There is, finally, no merit to appellants’ argument that the merger of title to Lot 1, the lake, the ranch, and the easement in Penry in 1962 extinguished the implied easements as to Lots 2, 3 and 5. The owner of the servient tenement must re-acquire all the dominant tenements in order to extinguish the implied easements appurtenant to them.
 
 (Crease
 
 v.
 
 Jarrell,
 
 65 Cal.App. 554 [224 P. 762].)
 

 The judgment is affirmed.
 

 Draper. P. J., and Bray, J.,
 
 *
 
 concurred.
 

 A petition for a rehearing was denied November 22, 1967, and appellants’ petition for a hearing by the Supreme Court was denied December 20, 1967.
 

 
 *332
 

 *
 

 Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.