445 So.2d 400 (1984)
William R. LACY, Appellant,
v.
Herbert SEEGERS, Jr., and Mary Seegers, His Wife, Appellee.
No. 83-234.
District Court of Appeal of Florida, Fifth District.
February 16, 1984.
*401 Robert F. Vason, Jr., of Potter & Vason, Mount Dora, for appellant.
Frank T. Gaylord of Gaylord, Gaylord & Osborne, P.A., Eustis, for appellees.
FRANK D. UPCHURCH, Jr., Judge.
Appellant William Lacy appeals from a summary judgment rendered against him and in favor of appellees Herbert and Mary Seegers holding that an easement was extinguished and merged with the fee title when the Jeknavorians, the former owners, became owners of the entire property.
An easement, by definition, is a right to land which is in the possession of another. 3 Powell, Real Property, ch. 34, § 425. It is extinguished through merger when ownership of the dominant and servient estates become united in one person. 28 C.J.S. Easements § 57; 25 Am.Jur.2d Easement and Licenses § 108; Castle Associates v. Schwartz, 63 A.D.2d 481, 407 N.Y.S.2d 717 (1978).
Certain requirements must be met to find merger. First, there must be unity of ownership of the dominant and servient estates. The ownership of the two estates must be co-extensive and equal in validity, quality, and all other circumstances of right. 25 Am.Jur.2d Easements and Licenses § 108. This rule has been construed to mean that in order to extinguish a right-of-way, there must be unity of ownership between the servient estate and every dominant state. Piazza v. Schaefer, 255 Cal. App.2d 328, 63 Cal. Rptr. 246 (Cal.1st App. 1967). Additionally, unity of title has been defined as unity of valid title, title in the name of the same person, and, of course, simultaneous ownership. 28 C.J.S. Easements § 57.
Originally in this case, sixteen lots were owned by a group who will be referred to as the "Boland Interest." Today, out of these sixteen lots, appellant Lacy owns the south one-half of lots 5, 6, 7, and 8 and all of lots 9 through 16, and the Seegers are the owners of the westerly portion of lot 3, all of lot 4, the north half of lot 5, and the north half of the westerly half of lot 6, as depicted by the following schematic drawing:
*402 
State Road 44-A forms the northern boundary of the Seegers' property and no portion of Lacy's property abuts either a public or private road.
Lacy contends that the trial court erred both in its finding of fact and its application of the doctrine of merger. Lacy acquired title to lots 9 through 16 in 1960 from the Boland Interest. Lacy's title to the south one-half of lots 5 through 8 is deraigned through Fred Jeknavorian, individually, who received his deed from Roberts in March, 1974. Roberts' deed came, in turn, from the Boland Interest. All of the deeds in this chain convey the property "less the west 20 feet for right-of-way and road purposes."
The chain through which the Seegers acquired their property is a little more complicated. Having received lots 1-4 and the north one-half of lots 5-8 from the common grantor, the Boland Interest, Eriksson conveyed to Stokes who in turn conveyed to Fred and Arlene Jeknavorian. The deeds from the Boland Interest to Eriksson and from Eriksson to Stokes all conveyed the property "less the west 20 feet thereof." Stokes conveyed to Fred and Arlene Jeknavorian in January, 1974, reserving a "20-foot right-of-way on the west side of lot 4 and the north one-half of lot 5." In July 1974, the Jeknavorians conveyed the smaller parcel now belonging to the Seegers to Porter subject to reservations of record. The Porters then deeded the property to Herbert Seeger, Jr. as trustee, who in turn conveyed to Herbert and Mary Seegers. These last two deeds contained no exception or reservation. For clarity, the title chains are illustrated below:
*403 
Lacy contends that the trial court erred in applying the merger doctrine because Jeknavorian never acquired title to both the dominant estate (now the Lacy tract) and the servient estate (now the Seegers tract).
In response, the Seegers cite Procacci v. Zacco, 324 So.2d 180 (Fla. 4th DCA 1975). There, an estate sold one parcel of land (tract A) to an heir of the estate and later sold an adjoining tract (tract B) to an oil *404 company with a deed to the latter stating that it was "subject to" an easement for a road right-of-way. The appellate court held that, at best, the use of the words "subject to" in an attempt to create an easement led to unclear and ambiguous results and that to understand the intentions of the parties, recourse must be had to surrounding agreements and circumstances. Id. at 182.
In the instant case, while some of the deeds did use the phrase "subject to," the court found that the language "less the west 20' thereof for right-of-way and road purposes" created an easement and this has not been disputed by the Seegers. Regardless, the facts and circumstances surrounding the deeds clearly indicate an intention by Boland, as the original common grantor, as well as subsequent holders, to create the easement.
We agree with Lacy's contention that there was no merger because unity of title as discussed above never existed. Fred Jeknavorian was deeded the south one-half of lots 5-8 (Lacy's) individually, while Arlene and he were deeded lots 1-4 and the north one-half of 5-8 as tenants by the entirety. Because title to both tenants was never in the same name (Fred and Arlene), there was no unity of title and no merger. In their deed from Stokes, Fred and Arlene did not obtain title to the west 20' of lots 4 and 5 and did not attempt to convey that portion but instead, reserved it. Porter's deed to Herbert Seegers, Jr., conveyed nothing more than "color" of title to the easement.
The court below entered summary judgment for the Seegers. The facts are not in dispute. We therefore reverse and remand for entry of summary judgment for appellant Lacy.
COBB and COWART, JJ., concur.