821 So.2d 1121 (2002)
Avery L. TYLER and Florence Tyler, Appellants,
v.
Dallas G. PRICE and Angela F. Price, his wife, Charles A. Brown, Patricia J. Brown and Shoreline Marine Transport, Inc., a Florida corporation, Appellees.
No. 4D01-3764.
District Court of Appeal of Florida, Fourth District.
June 19, 2002.
Rehearing Denied July 26, 2002.
*1123 Thomas R. Bolf of Ruden, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellants.
Keith T. Grumer and Maidenly Sotuyo-Macaluso of Grumer & Levin, Fort Lauderdale, for appellees Dallas G. Price and Angela F. Price.
WARNER, J.
This appeal challenges the trial court's final judgment quieting title to real property, resulting in the termination of appellants' easement across the property. The court relied on the doctrine of merger of title in determining that the easement had been extinguished. Because the ownership of the dominant and servient estates was not equal in the quality and validity of title, merger did not occur. We therefore reverse.
This case involves four parcels of property. Parcel A is a marina presently owned by appellants. Parcel B is a mobile home park presently owned by appellees. Over the northwest portion of parcel B is a twenty-five foot roadway easement granted to parcel A ("the 25 foot easement"). To the east of this 25 foot easement exists a trapezoid parcel leading to a marina basin ("the trapezoid").
Prior to 1962, Charles and Ruth Snyder owned all of the property in question in this case. During the Snyders' ownership, the eastern portion of Parcel A was a horseshoe-shaped non-commercial marina and the western portion was a vacant dirt *1124 lot. The Snyders had a residence near the trapezoid area, upon which a marine rail mechanism was used to haul boats out of the canal from a ramp.
In 1962, the Snyders sold Parcel B to Ravenswood, Inc. At the same time, the parties executed an agreement reserving the 25 foot easement in favor of Parcel A. The Snyders agreed to construct and pave the roadway over the easement, and thereafter, both parties would maintain it. The parties agreed that Parcel A could not be used in a way so as to create a nuisance as to Parcel B, a mobile home park. In addition, the agreement provided that the Snyders would convey the trapezoid parcel to Ravenswood if they sold Parcel A or otherwise discontinued use of their residence or the marine rail mechanism. Ravenswood subsequently sold Parcel B in 1963 to Stanley and Maria Klosinski. Through the death of Stanley, Maria obtained the property. She was also known as Maria Price.
The Snyders executed a lease and option to purchase Parcel A, excluding the trapezoid, to appellant, Avery Tyler, in 1972. Tyler exercised this option and purchased the property in 1975. Even though the recorded 1962 agreement required the Snyders to convey the trapezoid area to Ravenswood or its assigns, no conveyance was made. Thus, title to the trapezoid remained in the Snyders' name.
Tyler transferred the portion of Parcel A where the residence sat, to himself and his wife in 1984. He transferred the remainder of Parcel A to Marine Service & Supply of Broward County, Inc. Although Tyler was not deeded the trapezoid by the Snyders when he obtained the property, Tyler included it in his deed to Marine Service. This was a "wild deed," not constituting valid title.[1]
In 1989, Gustavo Passerelli purchased Parcel B, subject to the easement, from Maria Price, and she took back a mortgage on the property. Passerelli also purchased Parcel A from the Tylers and Marine Services the same year. The trapezoid was included in the legal description. The Tylers also took back a mortgage on the property. However, Passerelli failed to make his payments on both mortgages, and both Price and the Tylers foreclosed on their mortgages, securing judgments of foreclosure. The certificate of title issued by the court to the Tylers included Parcel A and the trapezoid area. The certificate of title to Price included Parcel B. Maria Price then sold Parcel B to appellees, Dallas and Angela Price.
In 1998, the Prices filed suit against the Tylers seeking termination of the 25 foot easement, alleging that it was personal to the Snyders, as well as a declaratory judgment that they had exclusive use and possession of the trapezoid area by reason of the 1962 agreement. Later, they amended their complaint to allege that the marina business was a nuisance to the mobile home park and demanded damages. The Tylers answered and counterclaimed for declaratory relief, requesting the court to declare that the 25 foot easement is perpetual and runs with the land and that the Tylers continue to have the right to use the easement. They also requested the court either declare a prescriptive easement in both the easement and the trapezoid area or quiet title to the trapezoid in them based upon the certificate of title they acquired in the mortgage foreclosure with Passerelli.
*1125 After suit was filed, Charles Snyder, as surviving owner, transferred his interest in the trapezoid area to the Prices.
At trial, the Prices proceeded on a merger of title theory regarding the easement. In the Final Judgment Quieting Title, the court found that the 25 foot easement was extinguished in 1989 when Passarelli acquired both Parcel A and Parcel B. Therefore, because the easement had been extinguished, the easement no longer encumbered Parcel B. As to the trapezoid area, the court found that when the Snyders sold Parcel A to the Tylers in 1975, the 1962 agreement obligated the Snyders to convey the trapezoid area to the Prices' predecessor in title. Therefore, the predecessors had equitable title which the Snyders held in trust. When the Snyders transferred legal title in 1998, combining it with the equitable title, the Prices had sole title to the trapezoid area. The court, therefore, quieted title in the Prices and ejected and ousted the Tylers from the easement and trapezoid area. This appeal followed.
Under the doctrine of merger, an easement is extinguished when the dominant and servient estates come under the ownership of one party. See Lacy v. Seegers, 445 So.2d 400, 401 (Fla. 5th DCA 1984). The dominant estate is the land benefitted by the easement, while the servient estate is the land burdened by the easement. See Black's Law Dictionary 527 (7th ed.1999). The Lacy court stated:
Certain requirements must be met to find merger. First, there must be unity of ownership of the dominant and servient estates. The ownership of the two estates must be co-extensive and equal in validity, quality, and all other circumstances of right. 25 Am.Jur.2d Easements and Licenses § 108. This rule has been construed to mean that in order to extinguish a right-of-way, there must be unity of ownership between the servient estate and every dominant state. Piazza v. Schaefer, 255 Cal. App.2d 328, 63 Cal.Rptr. 246 (Cal. 1st App. 1967). Additionally, unity of title has been defined as unity of valid title, title in the name of the same person, and, of course, simultaneous ownership. 28 C.J.S. Easements § 57.
445 So.2d at 401. In this case, the servient estate is Parcel B. Parcel A is a dominant estate, but so is the trapezoid. The road on the 25 foot easement extends to the trapezoid, and without it, the trapezoid has no access to the public road. Therefore, in order for the merger of title doctrine to extinguish the 25 foot easement on Parcel B, title to Parcel A, Parcel B, and the trapezoid all must be in the same person, must be valid, and must be of the same quality.
Passerrelli obtained title to both Parcels A and B but not to the trapezoid. The Snyders still retained legal title to that parcel. The court determined, however, that because of the 1962 agreement, title to the trapezoid should have been transferred to Maria Price (Passerrelli's predecessor). Therefore, according to the court, equitable title was in Passerrelli, extinguishing the easement.
The question we must address is whether the equitable title in the trapezoid is of the same validity and quality as the legal title Passerrelli had in Parcels A and B so as to fulfil the requirements of the merger doctrine. We hold that it is not of the same character. In George E. Sebring Co. v. O'Rourke, 101 Fla. 885, 134 So. 556, 559-60 (1931), the court discussed what an equitable title was, stating:
`An equitable title is `a right or interest in land, which, not having the properties of a legal estate, but being merely a right of which courts of equity will take notice, requires the aid of such court to make it available.' Pogue v. *1126 Simon, 47 Or. 6, 81 P. 566, 567, 114 Am. St. Rep. 903, 8 Ann. Cas. 474.
`Equitable title' has also been defined to be a right, imperfect at law, but which may be perfected by the aid of a court of chancery by compelling parties to do that which in good faith they are bound to do, or removing obstacles interposed in bad faith to the prejudice of another. See Words and Phrases, Second Series, Vol. 2, page 308, and authorities there cited.
An equitable estate, therefore, requires the intervention of a court of equity in order to establish that right. Thus, it does not have the same quality or validity as legal title until so decreed by the court. At the time Passerrelli acquired title to Parcels A and B, he would have only an imperfect title to the trapezoid area, assuming the Snyders had the obligation to transfer the title to the Prices. The legal and equitable titles were separate and of different quality. As a consequence, no merger of titles occurred, and the easement on Parcel B was not extinguished. We, therefore, reverse the trial court's judgment and direct that judgment be entered in favor of the Tylers declaring the continued existence of the 25 foot easement and their right to use it.
While we reverse the trial court's determination that the easement was extinguished as to Parcel B, we affirm the judgment insofar as it quieted title to the trapezoid area in the Prices, particularly in light of the Snyders' conveyance to them in 1998. The Tylers claim that they proved either adverse possession or a prescriptive easement in the property. We conclude that the facts, when viewed in the light most favorable to sustaining the court's judgment, do not support either claim. As to the prescriptive easement theory, the Tylers could not show twenty years of continuous use of the parcel. See Downing v. Bird, 100 So.2d 57, 64-65 (Fla. 1958); Supal v. Miller, 455 So.2d 593, 594 (Fla. 5th DCA 1984). While they purchased the property in 1975, the year and a half possession by Passerrelli broke the continuity of the Tylers' use of the property. There was no evidence offered at trial that Passerrelli had used the trapezoid area, and therefore, continuous use for twenty years by the Tylers and his predecessor was not shown. See id.
Finally, we reverse the attorney's fees' award to the Prices, whether or not they may be deemed to be the prevailing party at trial after this opinion. The Prices did not request attorney's fees in their pleadings. See Stockman v. Downs, 573 So.2d 835, 837-38 (Fla.1991). While the Prices claim that they did not have to plead attorney's fees based upon Glusman v. Lieberman, 285 So.2d 29, 31-32 (Fla. 4th DCA 1973), in which this court held that attorney's fees were considered part of the damages in a slander of title case, the Prices did not allege a slander of title claim. Instead, they sued for declaratory judgment, and the court entered a judgment quieting title. Neither type of action permits the recovery of attorney's fees absent a contractual provision or a statute authorizing the same. Moreover, attorney's fees in slander of title cases are considered "special damages." See Bloom v. Weiser, 348 So.2d 651, 653 (Fla. 3d DCA 1977). Florida Rule of Civil Procedure 1.120(g) states, "[w]hen items of special damage are claimed, they shall be specifically stated." Thus, the Prices are not entitled to attorney's fees.
Affirmed in part; reversed in part; and remanded for entry of judgment in accordance with this opinion.
SHAHOOD and HAZOURI, JJ., concur.
NOTES
[1] An owner can lose title on a wild deed only by application of the Marketable Record Title Act. See Moore v. Smith-Snagg, 793 So.2d 1000, 1003 (Fla. 5th DCA 2001).