76 P.3d 778 (2003)
Randall SCHLAGER and Joselito Castillo, Appellants,
v.
Patricia BELLPORT and John Sarine, Respondents.
No. 51325-7-I.
Court of Appeals of Washington, Division 1.
September 22, 2003.
*779 Mark D. Kimball, Bellevue, WA, for Appellants.
Frank R. Siderius, Siderius Lonergan & Martin LLP, Seattle, WA, for Respondents.
ELLINGTON, J.
Randall Schlager sought to enforce the terms of a covenant restricting building height. But because his property and that burdened by the covenant were once unified under a single ownership, the interests in the covenant merged. The covenant was therefore extinguished as to Schlager's lot. The trial court properly granted summary judgment dismissing Schlager's complaint.

FACTS
This case involves adjacent parcels of residential property near Lake Washington in south Seattle. One parcel is now owned by Randall Schlager and Joselito Castillo (Schlager), and the other is now owned by Patricia Bellport and John Sarine (Bellport). The relevant history of these parcels centers on an August 1971 conveyance of both properties. At that time, the owner of both parcels, Robbins, entered into a real estate contract for the sale of both parcels to Alder. An addendum to the contract contained a restriction limiting the height of any structure on Lot 1 to 25 feet. Lot 1 is now owned by Bellport. The covenant benefited two dominant estates: Lot 5 (now owned by Schlager) and Lot 2. The owner of Lot 2 was not a party to the 1971 contract, and is not a party to the current suit.
In January 1983, Alder conveyed Lots 1 and 5 to Swadberg.[1] Swadberg later sold the two lots separately, and since then the two lots have had separate owners. Schlager acquired Lot 5 in June, 1999. Bellport purchased Lot 1 in October, 2001.
In March, 2002, Bellport began a remodeling project that called for erection of trusses atop her home's formerly flat roof. Schlager filed suit, alleging a violation of the height restriction, and asking for declaratory and injunctive relief. After briefly ordering a halt to construction, the court heard motions for summary judgment from both sides. The court ruled that the height restriction covenant had been extinguished by merger of the *780 estates, and granted Bellport's motion dismissing Schlager's suit.

DISCUSSION
The covenant in the 1971 contract states:
This sale is made upon the following conditions which shall run with the land and be binding upon said grantees and their successors in interest, to wit:
No building shall be erected on Lot 1, Block 2, Sander's Lake Ridge Addition, according to plat recorded in Volume 40 of plats, page 31, in King County, Washington, lying westerly of easterly line of Lot 5, Block 19, said Lake Ridge Division One, extended northerly to Forest Avenue, which shall extend more than twenty-five (25) feet in height from that portion of the existing grade of Forest Avenue South, bordering the northerly boundary of said property, at the center line of the property.
This restriction is for the benefit of the owners of Lot 2, Block 2, Sander's Lake Ridge Addition, according to plat recorded in Volume 40 of plats, page 31, in King County, Washington, AND Lot 5, Block 19, Lake Ridge Division One, according to plat recorded in Volume 32 of plats, page 16, in King County, Washington, and may be removed only by the owners of these two lots, by their mutual agreement.[2]
The doctrine of merger recognizes the principle that "one cannot have an easement in one's own property."[3] The Restatement sets forth the principle as follows:
When the burdens and the benefits [of a covenant or servitude] are united in a single person, or group of persons, the servitude ceases to serve any function. Because no one else has an interest in enforcing the servitude, the servitude terminates.[4]
Schlager acknowledges that his lot and Bellport's were in unified ownership from 1971 until 1983. He contends, however, that merger occurs only where there is a unity of ownership of all dominant and servient estates affected by the covenant. Since Lot 2 was never in unified ownership, Schlager contends the doctrine does not apply.
Washington courts have not addressed whether a partial merger can occur when there is unity of ownership of the estates in question, but not complete unity of all estates affected by the covenant. In Cheever v. Graves, the Massachusetts court recognized partial merger: "For a unity of title to extinguish an easement, it is the ownership of the two estates that must be coextensive, and not the land area comprising the dominant and servient estates. The common ownership need not extend to the whole of the original dominant estate."[5] Applying this rule, the court found that no merger took place as to lots never held under single ownership, but that merger had extinguished the easement as to those lots held under single ownership.[6]
The Restatement clearly contemplates partial merger:
The extinguishment of an easement, when caused by unity of ownership alone, extends as far as the unity of ownership extends and no farther. Where there is unity of ownership of some only of the interests which may exist in a dominant and a servient tenement, the easement continues to exist as to the remaining interests.[7] *781 The Restatement (Third) of Property contains the following comment: "Merger does not take place if there are any outstanding interests in the servitude."[8] This comment, however, must be read in light of the intent in Restatement (Third) to describe (but not change) the generally accepted rule of merger and its interpretation.[9] Thus, the comment clarifies that merger does not take place if there are "outstanding interests" in the dominant or servient estates sought to be merged. The cases supporting this limitation on the merger doctrine all involve exactly such scenarios.[10]
Schlager points to two out-of-state cases for the proposition that "in order to extinguish a right-of-way there must be unity of ownership between the servient estate and every dominant" estate.[11] His reliance on these cases is misplaced. Neither case considered whether single ownership of all dominant and servient estates was necessary for merger; rather, they addressed whether unity of title occurred when differing interests existed in the two estates allegedly merged.[12] Absent unity of title, the merger doctrine does not apply. These cases are therefore not helpful here.
The rule enunciated in Cheever is sensible and consistent with the Restatement, and we adopt it. Here, the only covenant interest not in unified ownership was that of Lot 2. No outstanding interest existed as between Lot 1 and Lot 5, and merger therefore occurred as to those estates.
Schlager contends, however, that we should invoke equitable principles to enforce the covenant, citing the following rule from Radovich:
[C]ourts will not compel a merger of estates where the party in whom the two interests are vested does not intend such a merger to take place, or where it would be inimical to the interest of the party in whom the several estates have united, nor will they recognize claim of merger where to do so would prejudice the rights of innocent third persons.[13]
Schlager argues there was no intent to create a merger, but provides no evidence whatsoever on the issue of intent. He also contends that enforcement of the covenant would prejudice him because he purchased his property "in special consideration of the view and the [height] restrictions."[14] Because Schlager is in direct privity with the owners of the unified interests, however, he was not an innocent third party to the merger. Equitable principles therefore do not affect the merger analysis here.
*782 It is undisputed that Schlager's and Bellport's properties were united in single ownership continuously from the time of creation of the restriction in 1971 until 1983. During this period, no one had an interest in enforcing the terms of the covenant as to these two lots. This period of single ownership thus created a partial merger, and extinguished the covenant as to Bellport's and Schlager's properties.[15] The trial court did not err in granting summary judgment.[16]
Attorney Fees
Bellport requests attorney fees under RCW 4.84.330, pointing out that the 1971 contract provided that "[u]pon seller's election to enforce any covenant of this contract... the purchaser agrees to pay a reasonable sum as attorney's fees, and all costs and expenses."[17] The statute however, applies only to contracts entered into after September 21, 1977. Bellport cites no other authority for an award of fees in this case. We therefore award no fees.
Affirmed.
AGID and BAKER, JJ., concur.
NOTES
[1] In June 1983, the city approved a lot line adjustment that reconfigured Lot 1 into Lot B and Lot 5 into Lot A and blended portions of both parcels. This adjustment does not affect our analysis. For purposes of clarity, we will refer to the original lot designation numbers.
[2] Clerk's Papers at 191.
[3] Radovich v. Nuzhat, 104 Wash.App. 800, 805, 16 P.3d 687 (2001) (citing 5 RESTATEMENT OF PROPERTY § 497 cmt. a (1944)). The doctrine of merger applies to easements, covenants, and equitable servitudes. See 2 AMERICAN LAW OF PROPERTY §§ 8.92, 9.23, 9.37, at 300, 399, 439 (Little, Brown and Company 1952). Authority on the merger of easements is therefore applicable to the covenant at issue here.
[4] 2 RESTATEMENT (THIRD) OF PROPERTY § 7.5 cmt. a (2000).
[5] 32 Mass.App.Ct. 601, 592 N.E.2d 758, 762 (1992).
[6] Cheever, 592 N.E.2d at 762; see also Mularoni v. Bing, 306 Mont. 405, 34 P.3d 497, 503 (Mont. 2001) (common ownership of a dominant and servient estate extinguishes an easement as to those lots).
[7] 5 RESTATEMENT OF PROPERTY § 497 cmt c (1944). See also 2 AMERICAN LAW OF PROPERTY § 8.92 at 300 (Little, Brown and Company 1952) ("The unity of title as to part of the premises included in a dominant and a servient tenement necessarily causes an extinguishment of the easement appurtenant as to, but only as to, the area included in the unity.").
[8] 2 RESTATEMENT (THIRD) OF PROPERTY § 7.5 cmt d (2000).
[9] 2 RESTATEMENT (THIRD) OF PROPERTY § 7.5 Reporter's Note (2000).
[10] See, e.g., Boorom v. Rau, 640 A.2d 963, 964-65 (R.I.1994) (no merger occurred extinguishing easement over four lots where one lot owner purchased the easement over that lot; court expressly did not address whether partial merger resulted as to unified interests); Guy v. State, 438 A.2d 1250, 1253 (Del.Super.1981) (no merger where fee in the servient estate sought to be merged was subject to outstanding possessory interest (life estate)).
[11] See Lacy v. Seegers, 445 So.2d 400, 401 (Fla. App.5th Dist.1984); Pochinski Realty Associates v. Puzio, 251 N.J.Super. 388, 598 A.2d 523, 525 (1991).
[12] Lacy, 445 So.2d at 404 (no unity of title where one parcel held individually and second held as a tenant by the entirety); Pochinski, 598 A.2d at 525 (no unity of title where one parcel held individually and second held as tenant in common).
[13] Radovich, 104 Wash.App. at 805, 16 P.3d 687 (quoting Mobley v. Harkins, 14 Wash.2d 276, 282, 128 P.2d 289 (1942)).
[14] Br. of App. at 5. We note that Schlager's deed made no mention of the height restriction. In fact, none of the deeds recorded after the 1971 contract for either lot contained the height restriction covenant until the 2001 sale of Lot 1 to Bellport, which referenced restrictions in an attached schedule (apparently a title report excerpt that included the language of the 1971 height restriction). Further, Schlager does not rebut Bellport's assertion that his roof has exceeded the 25-foot limit since construction of the house in 1983.
[15] See Cheever, 592 N.E.2d at 762.
[16] Because we hold that the covenant was extinguished by merger, we need not address Bellport's arguments that the covenant was unenforceable on other grounds.
[17] Clerk's Papers at 190; see RCW 4.84.330.