WILLIAM BRELIANT, Trustee of the Breliant Trust, and ROBERTA SILVERMAN, Appellants, *v.* PREFERRED EQUITIES CORPORATION, a Nevada Corporation, Respondent.

No. 26748

May 30, 1996                                                918 P.2d 314

[Rehearing denied December 17, 1996]

*Jones, Jones, Close & Brown* and *Gary T. Foremaster,* Las Vegas, for Appellants.

*Lionel Sawyer & Collins* and *David N. Frederick,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This case arises out of a dispute between the owners of adjoining parcels of land (referred to respectively as the "Breliant Property" and the "PEC Property"). Appellants (referred to collectively as "Breliant") brought a declaratory relief action against respondent Preferred Equities Corp. ("PEC") in an attempt to abrogate an easement of record giving the owner of the PEC Property the use of thirty unspecified parking spaces on the Breliant Property. Because we conclude that the district court erred in refusing to declare the easement extinguished, we reverse the order of the district court and remand with instructions to enter judgment in favor of Breliant.

### FACTS

The Breliant Property is a tract of land in Las Vegas upon which is situated an apartment complex. The PEC Property is a contiguous tract of land upon which is situated a commercial office complex consisting of four buildings. Some time prior to December 7, 1976—before either Breliant or PEC acquired their respective properties—an express easement was created entitling

the owner of what is now the PEC Property to the use of thirty unspecified parking spaces on what is now the Breliant Property. This easement is referred to as the "First Easement." The First Easement thus benefited what is now the PEC Property (the dominant tenement) and burdened the Breliant Property (the servient tenement). Although the First Easement is not mentioned in Breliant's deed, the First Easement is recited in PEC's deed and recorded in Breliant's chain of title.

On December 7, 1976, again before Breliant or PEC acquired their respective properties, the Breliant Property was conveyed to "Joseph R. Laird, Jr. and Kenneth J. Fisher, each married men as their sole and separate property." On March 2, 1977, the PEC Property, including the First Easement, was conveyed to "Joseph R. Laird, Jr. and Kenneth J. Fisher."

By quitclaim deed dated April 4, 1979, "Joseph R. Laird and Patricia J. Laird, husband and wife," released their interest in the Breliant Property to Kenneth J. Fisher (Fisher). In connection with the conveyance of the Breliant Property, but in a separate document dated April 1, 1979, Fisher granted to Joseph R. Laird, Jr. (Laird) an easement entitling the owner of the PEC Property to the use, in common with owner of the Breliant Property, of all exterior parking between the office building on the PEC Property and the apartment building on the Breliant Property. This easement is referred to as the "Second Easement." Finally, in a deed dated May 1, 1979, Fisher quitclaimed his interest in the PEC Property to Laird. All three instruments were recorded on May 3, 1979.

After Breliant acquired the Breliant Property in 1988, PEC continued to assert that it was entitled to the thirty unspecified parking spaces under the First Easement, in addition to the parking spaces included in the Second Easement. Breliant, believing the First Easement to still be in existence, approached PEC in an unsuccessful attempt to negotiate some arrangement with regard to the thirty "unspecified" parking spaces. However, after seeking the advice of legal counsel, Breliant took the position that the First Easement had been extinguished by operation of law when the dominant and servient tenements were both held by Laird and Fisher. Breliant subsequently initiated the present litigation in an attempt to remove the cloud created by the continuing reference to the First Easement in PEC's deed.

In an earlier appeal, this court reversed an order of the district court dismissing Breliant's complaint under NRCP 12(b)(5) because "the district court erred in declining to consider the merger and termination of the First Easement."[1] Following

---

[1]*See* Breliant v. Preferred Equities, 109 Nev. 842, 847, 858 P.2d 1258, 1261 (1993) (reversal of order granting motion to dismiss for failure to state a claim upon which relief could be granted).

remand by this court, and a bench trial, the district court concluded that (1) due to community property presumptions, the conveyance of the Breliant Property to Laird and Fisher also created an ownership interest in the property in the men's wives, but the conveyance of the PEC Property did not; (2) because the dominant and servient tenements were therefore never in common ownership, the doctrine of extinguishment through merger was not applicable to the First Easement; (3) even if the merger doctrine might otherwise be applicable, the First Easement was "re-created and/or revived" upon the severance of the common ownership; (4) the First Easement is "necessary to the proper and reasonable use and enjoyment of the PEC Property;" and (5) because of his conduct, Breliant is estopped from claiming that the First Easement has been extinguished. Thus, the district court entered judgment in favor of PEC. Breliant now appeals the district court's entry of judgment.

## DISCUSSION

### The Law of the Case

Breliant contends that the district court failed to follow the law of the case as set forth in the prior appeal when the district court considered whether the Breliant and PEC properties were ever held in common ownership.[2] We disagree.

A principle or rule of law becomes the law of the case only if it is necessary to the appellate court's decision. Cord v. Cord, 98 Nev. 210, 213, 644 P.2d 1026, 1028 (1982); *see also* Sherman Gardens Co. v. Longley, 87 Nev. 558, 565, 491 P.2d 48, 53 (1971) (an issue becomes the law of the case only if presented, considered, and deliberately decided). However, in deciding whether to dismiss a complaint pursuant to NRCP 12(b)(5), "[a]ll allegations pled must be accepted as true." Bergmann v. Boyce, 109 Nev. 670, 674, 856 P.2d 560, 563 (1993). As

---

[2]In *Breliant,* we stated:

When one party acquires present possessory fee simple title to both the servient and dominant tenements, the easement merges into the fee of the servient tenement and is terminated. Therefore, *accepting as true the facts as alleged in the amended complaint, and agreed to by the parties,* the First Easement was extinguished on March 2, 1977, when Laird and Fisher, who owned what is now the Breliant Property, also acquired what is now the PEC property. Laird and Fisher held both the dominant (the PEC Property) and the servient (the Breliant Property) tenements in common ownership, and thus the First Easement merged into the fee of the Breliant Property and terminated.

109 Nev. at 846-47, 858 P.2d at 1261 (citation omitted) (emphasis added). *See also id.* at 843, 858 P.2d at 1259 ("[t]he facts as alleged in appellants complaint are undisputed").

*Bergmann* makes clear, the dispositive resolution of questions of fact is not a part of a motion to dismiss on the pleadings. Consequently, insofar as *Breliant* may have purported to reach a dispositive conclusion on the factual issue of unity of ownership, such a conclusion was unnecessary in light of the procedural posture of the appeal.

We therefore hold that unity of ownership did not become the law of the case. Our holding in *Breliant* was simply that (1) if there is unity of interest (*i.e.*, common ownership) in the two properties, then the First Easement was extinguished, and (2) Breliant pled sufficient facts to state a claim based on extinguishment. *See* 109 Nev. at 847, 858 P.2d at 1261. It follows that, on remand, the district court—as the trier of fact and free of the procedural constraints accompanying the motion to dismiss—did not act in excess of its jurisdiction in considering whether in fact there was ever common ownership of the Breliant and PEC properties.

## Judicial Estoppel

Breliant contends that the district court erred in refusing to preclude PEC from denying unity of interest at trial under the doctrine of judicial estoppel. Breliant points to various pretrial motions in which PEC listed common ownership of the Breliant and PEC properties as either an "undisputed" or "agreed to" fact. Apparently, the first indication that PEC would be disputing unity of ownership appears in PEC's trial brief filed on November 8, 1994—six days before the post-remand trial. In response, PEC argues that the district court did not err because PEC's previous representations did not inure to PEC's benefit. We agree.

" 'Under the doctrine of judicial estoppel a party may be estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding the contrary of the assertion sought to be made.' " Sterling Builders, Inc. v. Fuhrman, 80 Nev. 543, 549, 396 P.2d 850, 854 (1964) (quoting 31 C.J.S. *Estoppel* § 121 at 649). In *Sterling Builders,* Fuhrman sued Sterling Builders and another defendant as co-partners doing business as Sterling Village Market. *Id.* at 544, 396 P.2d at 851. Sterling Builders' defense was that it was not a partner, but merely a creditor. *Id.* However, in a previous action, Sterling Builders had claimed that it *was* a partner in Sterling Village Market, thus enabling it to secure the appointment of a receiver for Sterling Village Market and share in the eventual sale of the market's assets. *Id.* at 549, 396 P.2d at 854. The district court ruled that

Sterling Builders was, by its actions in the receivership proceeding, judicially estopped from denying its partnership relationship in the later proceeding. *Id.* at 550, 396 P.2d at 854. This court affirmed, concluding that Sterling Builders was judicially estopped from advancing in the later proceeding the inconsistent claim that it was not a partner in Sterling Village Market because it had "initiat[ed], prosecut[ed], and effectuat[ed] the results of the receivership to its own benefit." *Id.* at 549, 396 P.2d at 854.

In the present case, PEC ultimately did not prevail on its pre-trial motions. Consequently, we conclude that PEC did not benefit by arguing previously that common ownership was undisputed. We note that some courts have held that a favorable judgment is not always a necessary element of judicial estoppel, "so long as the party against whom the estoppel is sought has been successful in arguing its original position against the party asserting the estoppel." *See, e.g.,* DeMers v. Roncor, Inc., 814 P.2d 999 (Mont. 1991). Nevertheless, we conclude that the inconsistencies in PEC's pre-trial arguments represent a legitimate abandonment of a clearly unsupportable theory of the case, rather than an attempt by PEC to "have it both ways." Under the circumstances, we hold that the district court's refusal to estop PEC to deny unity of ownership was not a clear abuse of discretion.

## *The First Easement*

Breliant contends that the district court's conclusion that the First Easement was not extinguished and, if it was, then it was "re-created and/or revived," is not supported by substantial evidence adduced at trial. We agree.

"Where the trial court, sitting without a jury, makes a determination predicated upon conflicting evidence, that determination will not be disturbed on appeal where supported by substantial evidence." Trident Construction v. West Electric, 105 Nev. 423, 427, 776 P.2d 1239, 1241 (1989). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." State Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986).

In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself. *See, e.g.,* Ernie v. Trinity Lutheran Church, 336 P.2d 525 (Cal. 1959); Olsen v. Park Daughters Investment Company, 511 P.2d 145, 146 (Utah 1973). Moreover, there is a presumption in favor of the record title-holder. *Cf.* Biasi v. Leavitt, 101 Nev. 96, 89-90, 692 P.2d 1301,

1304 (1985) (adverse possession claimant has the burden of establishing claim "by clear and competent proof in order to overcome the presumption that possession of the land is under the regular title").

### 1. *Extinguishment of the First Easement through Merger*

Breliant contends that the district court's finding that the two properties were never held in common ownership is not supported by substantial evidence because the district court misapplied community property presumptions to the facts of this case. We agree.

"Properties acquired during marriage are presumed to be community property, and the presumption can only be overcome by clear and certain proof." Burdick v. Pope, 90 Nev. 28, 29, 518 P.2d 146, 146-47 (1974); *see also* Forrest v. Forrest, 99 Nev. 602, 668 P.2d 275 (1983). In the present case, the Breliant Property was conveyed to Laird and Fisher, "each married men as their sole and separate property," while the PEC Property was conveyed simply to Laird and Fisher. We conclude that the district court properly found that the conveyance of the PEC Property to Laird and Fisher created a vested community interest in the property in their wives. However, we also conclude that, regardless of the separate property language in the Breliant Property deed, there was insufficient proof to rebut the general presumption in favor of community property in regard to the Breliant property.

The only evidence in the record to support PEC's contention that the Breliant Property was Laird and Fisher's separate property is the recitation in the deed that it was conveyed to them "as their sole and separate property." As Breliant points out, however, this court has specifically held that the phrase "sole and separate property" in a deed, "standing alone, without supporting evidence, is not the clear and certain proof required to overcome the presumption." *Burdick,* 90 Nev. at 30, 518 P.2d at 146-47. Because PEC was apparently unable to trace the source of the funds Laird and Fisher used to purchase the Breliant Property to a separate property source, we conclude that the district court's conclusion that the Breliant property was Laird and Fisher's separate property is not supported by substantial evidence. We hold, accordingly, that the district court erred in concluding that there did not exist a unity of interest sufficient to extinguish the First Easement.

## 2. Revival or Re-creation of the First Easement

Breliant contends that the district court erred in concluding that, as a result of the circumstances surrounding the severance of the two properties, the First Easement was "re-created and/or revived either expressly or by implication."

When an easement has been extinguished by the joining of the dominant and servient tenements, the easement does not come into existence again merely by severance of the united estates; nevertheless, upon severance, a newly created easement authorizing a use corresponding to the use authorized by the extinguished easement may arise. Restatement of Property § 497 cmt. h (1944). According to the Restatement, "[s]uch a new creation may result . . . from an express stipulation in the conveyance by which the severance is made or from the implications of the circumstances of the severance." *Id.*

In the present case, there is no language in any of the relevant instruments expressly reviving or re-creating the First Easement (or a corresponding easement for thirty unspecified parking spaces). However, both the quitclaim deed releasing Fisher's interest in the PEC Property and the deed granting the second easement recite the same legal description of the PEC Property as was contained in the deed by which Laird and Fisher had originally acquired the PEC Property—including the description of the First Easement.

We conclude that the mere reference to an extinguished easement in a deed is insufficient, as a matter of law, to revive the easement. *See* Capital Candy Co. v. Savard, 369 A.2d 1363 (Vt. 1976) ("[T]he mere reference in a deed to an earlier right-of-way which was extinguished by law does not constitute the re-creation of that right."). Accordingly, we hold that the reference to the extinguished easement in the deeds effecting the severance of the two properties—and, consequently, in the deed by which PEC presently holds title to the PEC Property—conveyed a nonexistent easement and thus provides merely color of title in the First Easement.[3]

---

[3]We recognize that "[s]ometimes language not in itself appropriate to create an easement is found, when construed in the light of the circumstances under which the conveyance containing the language was made, competent to do so." Restatement of Property, § 474, cmt. c. However, we can discern no such circumstances in this case. In fact, a close reading of the deed granting the Second Easement provides further evidence that revival of the First Easement was not intended by Laird and Fisher. Although the grant of the Second Easement incorporates, by reference, a description of the PEC

We also conclude that the district court's conclusion that the First Easement was re-created by implication is not supported by the evidence. This court has held that an easement may be revived or re-created after severance, by implication, where there is "apparent and continuous use" and the asserted easement is "necessary to the proper or reasonable use of the dominant tenement." Jackson v. Nash, 109 Nev. 1202, 1213, 866 P.2d 262, 270 (1993). In deciding whether an implied easement by necessity has been established, the court looks to conditions at the time of severance. *See id.*

As a preliminary matter, we conclude that, because Breliant has established that the First Easement was extinguished and that the reference to the First Easement in PEC's deed provides PEC mere color of title, Breliant, as the holder of good title in the Breliant Property, is entitled to the presumption in favor of the record title holder. *See* Biasi v. Leavitt, 101 Nev. 96, 692 P.2d 1301 (1985). Consequently, we conclude that PEC, as the adverse claimant, must bear the burden of proving better title in itself through an implied revival or re-creation of the First Easement.

Because neither Laird nor Fisher, nor anyone else having personal knowledge of the conditions at the time of severance, testified at trial, the only evidence of an implied easement by necessity is that which can be gleaned from the recital of the extinguished First Easement in the quitclaim deed to Fisher, the concomitant grant of the Second Easement, and the existence of the office complex itself. We conclude that this is weak evidence, at best, of an "apparent and continuous use" at the time of severance. More importantly, however, we conclude that there is nothing in this evidence to support a finding of necessity. PEC argues that the parking spaces provided by the First, as well as the Second, Easement were necessary to the compliance of the PEC Property with local zoning ordinances regarding the number of parking spaces for commercial buildings. *See* Clark County Code § 29.44.080 (as amended January 13, 1978). The district court based its finding of easement by implication, at least in part, on this argument. We note that the parking spaces provided by the Second Easement alone were sufficient to bring the PEC Property into compliance with the pre-1978 zoning requirements, which would have continued to apply to the PEC Property.[4]

---

Property that includes the First Easement, Fisher is specifically described in the grant itself as the owner of the Breliant property *"and all outside parking thereon"* (emphasis added).

[4]*See* Clark County Code § 29.44.080 (parking requirements are only required for new construction, reconstruction, enlargement, and major

PEC, nevertheless, argues that the additional parking spaces were necessary so that PEC could comply with the post-1978 zoning requirement should future events make reconstruction, enlargement, or major repairs necessary. Clearly, the flexibility to deal with future zoning-related contingencies, which a legal surplusage of parking spaces would have provided, would have been a benefit to the owner of the PEC Property. However, we disagree with the contention that a potential future need for more parking created a necessity for unneeded parking at the time of severance. Having thoroughly reviewed the record, and finding no other evidence of necessity, we conclude that the district court's finding that the First Easement was revived or re-created by implication is not supported by substantial evidence.

Because we find insufficient evidence in the record to support a conclusion that an easement for thirty parking spaces was re-created at the time of severance, either expressly or by implication, we conclude that the district court erred in concluding that the First Easement is still in existence.

### Equitable Estoppel

Finally, Breliant contends that the district court abused its discretion by estopping Breliant from asserting any claim seeking to eliminate the First Easement. We agree.

It is undisputed that Mr. Breliant believed the First Easement to be still in effect at the time he purchased the Breliant Property and that he approached PEC in an unsuccessful attempt to negotiate an arrangement with respect to the thirty ''unspecified'' parking spaces covered by the First Easement. In fact, Mr. Breliant testified that he did not become aware of the doctrine of extinguishment, nor did he have any indication that it might be applicable to the First Easement, until it was later brought to his attention by his present counsel.

''Equitable estoppel operates to prevent a party from asserting legal rights that, in equity and good conscience, they should not be allowed to assert because of their conduct.'' United Brotherhood v. Dahnke, 102 Nev. 20, 22, 714 P.2d 177, 178-179 (1986). This court has previously characterized equitable estoppel as generally comprised of the following four elements:

> (1) The party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel had the

---

repairs exceeding fifty percent of the value of the structure); *see also* Pederson v. County of Ormsby, 86 Nev. 895, 897, 478 P.2d 152, 154 (1970) (''zoning ordinances do not limit the right of a land owner to continue the use of the land in existence at the time of the adoption of the ordinance'').

right to believe it was so intended; (3) the party asserting estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped.

Cheqer, Inv. v. Painters & Decorators, 98 Nev. 609, 614, 655 P.2d 996, 998-99 (1982). The burden of proof is upon the party asserting the estoppel. Nevada State Bank v. Jamison Partnership, 106 Nev. 792, 799, 801 P.2d 1377, 1382 (1990). Thus, PEC bore the burden of establishing the necessary elements for an estoppel.

Under the circumstances, we conclude that Mr. Breliant was not apprised of the "true facts" when he approached PEC to negotiate an arrangement regarding the First Easement parking spaces. Moreover, we conclude that there is no evidence in the record to show that PEC was induced to make a detrimental change of position because of Breliant's unintentional misrepresentation over the continuing existence of the First Easement. Thus, PEC has failed to establish the necessary elements for application of the doctrine of equitable estoppel. We therefore conclude that the district court abused its discretion in estopping Breliant from challenging the existence of the First Easement.

## CONCLUSION

We conclude: (1) the district court did not contravene the law of the case by considering the extinguishment issue; (2) the district court did not err in refusing to preclude PEC, under the doctrine of judicial estoppel, from asserting that there was never a unity of interest in the Breliant and PEC properties; (3) the district court's findings that (a) there was never a unity of interest sufficient to extinguish the First Easement and (b) even if the First Easement was extinguished, it was subsequently revived or re-created, either expressly or by implication, are not supported by substantial evidence; and (4) the district court abused its discretion in estopping Breliant from challenging the existence of the First Easement. In sum, we conclude that Breliant has established, as a matter of law, that the First Easement was extinguished and not subsequently revived or re-created.

We reverse the district court's entry of judgment in favor of PEC and remand this case with instructions that judgment be entered in favor of Breliant declaring the First Easement extinguished.[5]

---

[5]THE HONORABLE CLIFF YOUNG, Justice, voluntarily recused himself from participation in the decision of this appeal.