[No. 45244-4-I.   Division One.   January 22, 2001.]

JOHN C. RADOVICH, ET AL., *Respondents*, v. SAMAD NUZHAT,[†] ET AL., *Appellants*.

EIJAZ SAMAD, ET AL., *Appellants*, v. PROPERTIES FOUR, INC., ET AL., *Respondents*.

---

[†] The superior court erroneously used the name Samad Nuzhat, when the correct name should be Nuzhat Samad.

*Blair B. Burroughs* (of *Lawler & Burroughs, P.C.*), for appellants.

*Thomas F. Peterson* (of *Betts Patterson & Mines, P.S.*) and *Stephen J. Sirianni* (of *Sirianni & Youtz*), for respondents.

BAKER, J. — Owners of the servient estate of a disputed parking easement appeal from two orders on summary judgment quieting title to the easement in the respondents as owners of the dominant estates. Appellants contend the easement was extinguished under the doctrine of merger when the dominant and servient estates came into common ownership, and was not recreated by any subsequent conveyance. We affirm, holding that the disputed parking easement was expressly recreated by the deeds to respondents Radovich and Collins.

## I

This case involves three parcels of land in the City of Renton. The first parcel is unimproved vacant property (Vacant Land) owned by appellants Eijaz and Nuzhat Samad, and WBW, L.L.C. (Samads). The Vacant Land is not contiguous with the other two parcels at issue in this case. Respondents John and Carol Radovich own one parcel,

which is improved with a commercial building and is referred to as the "IBM Building." Respondent Collins, L.L.C., owns the third parcel, which is also improved and referred to as the "Collins Building."

A. Common ownership by Horbach in October 1986.

In 1986, the owner of the Vacant Land was Seventh Avenue Corporation. The IBM and Collins buildings were owned by Eugene Horbach (Horbach). In October 1986, an easement was created burdening the Vacant Land for the benefit of the Collins Building. The easement authorized the owner of the dominant estate (Collins Building) to construct and maintain a paved parking lot.

The easement was created at the request of Horbach's lender, Aetna Life & Casualty, to ensure that adequate parking would be available in the future. The easements were created in connection with Horbach's granting of two deeds of trust on the IBM and Collins buildings to Aetna to secure various loans to Horbach. The parking lot was never constructed.

On October 24, 1986, the same day that the parking easement was recorded, Seventh Avenue Corporation conveyed its interest in the Vacant Land to Horbach. On this date, Horbach owned both the dominant and servient estates (subject to the deeds of trust in favor of Aetna). Samads contend that this was the first of several occasions on which the parking easement was extinguished by merger.

In May 1987, a document entitled "First Amendment to Parking Easement" was recorded. In this document, Seventh Avenue Corporation purported to grant an enlargement of the dominant estate of the parking easement to include the IBM Building, even though Horbach already held title to both the servient estate (the Vacant Land) and the dominant estate (IBM and Collins buildings).

B. Common ownership by Rim Shot, Inc., in 1993.

In 1992, the IBM and Collins buildings were transferred to Jackpot Investments, Inc. Horbach retained the Vacant

Land. In February 1993, Jackpot conveyed its interests in the IBM and Collins buildings to Rim Shot, Inc. In June 1993, Horbach also conveyed his interest in the Vacant Land to Rim Shot. At this point, all three parcels were owned by Rim Shot (subject to the deeds of trust in favor of Aetna). Samads contend that this was the second occasion on which the parking easement was extinguished by merger.

C. Common ownership by Aetna in 1994.

In 1993 and 1994, the various deeds of trust in favor of Aetna were in default, and Aetna foreclosed on the properties. Aetna received deeds to all three properties. Samads contend that this was the third occasion on which the parking easement was extinguished by merger.

D. Conveyance of the Collins Building and parking easement to Collins.

In 1995, Aetna conveyed the Collins Building by bargain and sale deed to respondent Collins. The granting language on the first page of the deed purports to convey:

> the real property situated in the County of King, State of Washington, more particularly described in Exhibit A attached hereto and by this reference made a part hereof.
>
> TOGETHER with the easements, hereditaments and appurtenances belonging to or inuring to the benefit of and pertaining to such real property.
>
> . . . .

The attached "Exhibit A" provides the legal descriptions of the interests actually conveyed, including legal descriptions of the Collins Building, and:

> Parcel C:
>
> An easement for the purpose of constructing, maintaining, repairing, and replacing a paved parking lot for the parking of motor vehicles and for ingress and egress to and from such paved parking, appurtenant to Parcel A as more particularly set forth above, created by instrument recorded under King County Recording Number 8610240377, as amended by instrument recorded under King County Recording Number

8705061297, upon the following described property:

That portion of the southwest quarter of Section 18, Township . . . [complete legal description follows].

### E.  Common ownership of the Vacant Land and IBM Building by Hazelrigg in 1995.

In 1995, Aetna conveyed the IBM Building to Thomas Hazelrigg. Like the conveyance to Collins, this conveyance specifically included an easement for a parking lot and included a complete legal description of the Vacant Land. At the same time, Aetna also conveyed the Vacant Land to Hazelrigg. At this point, Hazelrigg owned both the dominant and servient estates. Samads contend this was the fourth occasion on which the parking easement was extinguished by merger (at least as applied to the IBM Building).

### F.  Conveyance of the IBM Building to respondents Radovich.

On April 18, 1996, Hazelrigg granted a deed of trust for the IBM Building in favor of respondents Radovich to secure a loan. Hazelrigg defaulted on the loan, and the IBM Building was transferred to Radovich. Again, the conveyance specifically included an easement for a paved parking lot and included a complete legal description of the Vacant Land.

### G.  Conveyance of the Vacant Land to appellants Samad.

Hazelrigg also granted a deed of trust on the Vacant Land in favor of the Pacific Coast Investment Company (PCIC). Hazelrigg defaulted, and the Vacant Land was conveyed to PCIC in July 1996. Through a series of additional transactions not relevant to this appeal, the Vacant Land was eventually conveyed to appellants Samad.

### H.  Procedural History.

Respondents Radovich brought an action to quiet title to the parking easement. Samads brought a counterclaim and third party claim against Collins to quiet title to the Vacant Land and extinguish the easement. The trial court granted summary judgment in favor of respondents.

II

## A. Standard of Review.

█ This court reviews a grant or denial of summary judgment de novo.[1]

## B. Merger and Reconveyance.

█ As a general rule, one cannot have an easement in one's own property. Where the dominant and servient estates of an easement come into common ownership, the easement is extinguished.[2] This is the rule in Washington.[3] However, the doctrine of merger is disfavored both at law and in equity, and there are exceptions to its application.

> Consequently, the courts will not compel a merger of estates where the party in whom the two interests are vested does not intend such a merger to take place, or where it would be inimical to the interest of the party in whom the several estates have united, nor will they recognize a claim of merger where to do so would prejudice the rights of innocent third persons.[4]

█ It is not necessary to reach the issue of whether the parking easement was previously extinguished by merger. We hold that, even if merger occurred, the easement was recreated by subsequent conveyances.

> When an easement has been extinguished by unity, the easement does not come into existence again merely by severance of the united estates. . . . Upon severance, a new easement authorizing a use corresponding to the use authorized by the extinguished easement may arise. If it does arise, however, it does so because it was newly created at the time of the severance. *Such a new creation may result, as in other cases of severance, from an express stipulation in the conveyance by which the severance*

---

[1] *Daley v. Allstate Ins. Co.*, 135 Wn.2d 777, 782, 958 P.2d 990 (1998).

[2] 5 RESTATEMENT OF PROPERTY § 497 cmt. *a* (1944).

[3] *Coast Storage Co. v. Schwartz*, 55 Wn.2d 848, 853, 351 P.2d 520 (1960).

[4] *Mobley v. Harkins*, 14 Wn.2d 276, 282, 128 P.2d 289 (1942) (citations omitted).

*is made* or from the implications of the circumstances of the severance.[5]

(Emphasis added.)

The plain language in the deeds to Collins and Radovich was an express stipulation to reconvey the easement regardless of whether the same easement previously merged. Each deed clearly stated that it conveyed an easement, stated the purpose and scope of the easement, and gave a legal description of the servient estate. Appellants concede that the language in these deeds would be sufficient to create an easement if no merger had occurred.

The issue, then, is whether something more is required to recreate a previously extinguished easement than is required to create the easement in the first instance. The trial court considered this issue, and noted that there is no authority for a heightened standard. On appeal, the appellants have not cited any authority to indicate why the standard for recreation of a previously extinguished easement would be different.

The *Restatement of Property* suggests that the standards for creating an easement by express conveyance and for recreating such an easement are the same.[6] In the absence of any contrary authority, we hold that the standards are the same, and that the deeds to Collins and Radovich effectively recreated the parking easement.

Appellants rely on two cases for the proposition that a previously extinguished easement cannot be recreated by a "mere reference" to the earlier easement. In *Capital Candy Co. v. Savard*,[7] an easement for a right-of-way originally created in 1933 was extinguished by a subsequent unity of ownership. The plaintiff argued that the easement was recreated when the dominant and servient estates were severed. The court disagreed:

---

[5] 5 Restatement of Property § 497 cmt. *h* (1944).

[6] 5 Restatement of Property § 497 cmt. *h* (1944) (noting that recreation of an extinguished easement may occur "as in other cases of severance," and cross-referencing Restatement sections on the initial creation of easements by express conveyance).

[7] 135 Vt. 14, 369 A.2d 1363 (1976).

The first of these conveyances . . . to the defendant Savard dated March 23, 1973, purportedly conveyed the rights-of-way mentioned in the [1933 deed]. The second conveyance by warranty deed from the defendant to the plaintiff dated April 10, 1973, also purported to convey the same rights-of-way referred to in the [1933 deed]. We hold that in neither of these two deeds executed in 1973 was an easement re-created in favor of the grantees. The grantors in those deeds conveyed a nonexistent right-of-way, a right-of-way extinguished by the merger of the properties in 1944. *The mere reference in a deed to an earlier right-of-way which was extinguished by law does not constitute the re-creation of that right-of-way.*[8]

(Emphasis added.) The court cited no authority to support the last sentence (emphasized above), and the basis for its holding is unclear. While the later deeds "purportedly conveyed" the right-of-way mentioned in an earlier conveyance, it is unclear from the *Capital Candy* opinion whether the language actually describing the easement was contained in the new deeds or merely incorporated by reference. The court's rationale—that the grantors conveyed an extinguished right-of-way—only begs the question. After stating that the deeds "purported to convey" the right-of-way, the court also characterized this as a "mere reference" to an earlier right-of-way.

*Capital Candy* was followed in *Breliant v. Preferred Equities Corp.*[9] In that case, a "First Easement" for 30 unspecified parking places was extinguished when the properties came into common ownership. Later, when the affected properties were severed, a "Second Easement," also for parking but different than the First Easement, was expressly granted in favor of the dominant estate. The new owner of the dominant estate, Preferred Equities Corp. (PEC), asserted that it was entitled to the use of both easements, based on the argument that the First Easement

---

[8] *Capital Candy*, 369 A.2d at 1365.

[9] 112 Nev. 663, 918 P.2d 314 (1996).

had been recreated upon severance. The Nevada Supreme Court disagreed:

> In the present case, there is no language in any of the relevant instruments expressly reviving or re-creating the First Easement (or a corresponding easement for thirty unspecified parking spaces). However, both the quitclaim deed [to PEC] and the deed granting the second easement recite the same legal description of the PEC Property as was contained in the deed by which [PEC's predecessors] had originally acquired the PEC Property—including the description of the First Easement.
>
> We conclude that the mere reference to an extinguished easement in a deed is insufficient, as a matter of law, to revive the easement. *See Capital Candy Co. v. Savard*, 135 Vt. 14, 369 A.2d 1363 (1976).[10]

We cannot determine from the *Capital Candy* and *Breliant* opinions exactly what language was used in the disputed conveyances, or what those courts considered to be a "mere reference" as opposed to an express reconveyance. In any case, we find that the recent conveyances to respondents in this case were not "mere references" to the earlier easement because the language in those conveyances was sufficient to create the easement anew. To the extent *Capital Candy* and *Breliant* would hold that such language is not sufficient to recreate an easement, we respectfully disagree and decline to follow those courts.

C. Attorney Fees on Appeal.

The trial court did not award fees to either party. Respondents argue, for the first time on appeal, that the appellants are the "defaulting party" under an attorney fee provision in the original 1986 parking easement. Respondents cite no authority to establish that the appellants have "defaulted" under the terms of that easement merely by litigating its existence. We will not consider this issue for the first time on appeal.[11]

---

[10] *Breliant*, 918 P.2d at 319.

[11] RAP 2.5(a).

Affirmed.

AGID, C.J., and BECKER, J., concur.

Reconsideration denied March 5, 2001.