# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ROBERT J. CONKLIN, a single individual, | No. 54109-2-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| MARCIA BENTZ, a single individual, | |
| Respondent. | |

MAXA, J. – This appeal arises out of a situation in which two adjacent property owners, Robert Conklin and Marcia Bentz, who purchased their respective lots from the same owner, unknowingly were sharing the same nonconforming septic drainfield system that was located on Bentz's property. Conklin claimed that a written easement the prior owners recorded for use of the drainfield granted him the exclusive right to use the system or in the alternative, that he had a prescriptive easement for the drainfield. He also argued that Bentz's unpermitted connection to the drainfield was a nuisance. Bentz claimed that she had adversely possessed the land on her side of a fence between the properties.

The trial court granted summary judgment in favor of Bentz on the adverse possession claim. After trial, the court dismissed Conklin's prescriptive easement and nuisance claims and found that there was an implied easement that allowed both parties to share use of the drainfield system. The court awarded Bentz reasonable attorney fees on the prescriptive easement and adverse possession claims.

We hold that (1) the trial court did not err in finding an implied easement because the express easement for use of the drainfield was invalid, (2) the trial court did not err when it dismissed Conklin's nuisance claim, (3) the trial court erred in awarding attorney fees to Bentz for defending against the prescriptive easement claim under RCW 7.28.083(3) because a prescriptive easement claim is not an action that asserts title to real property, and (4) the record is inadequate to support the amount of attorney fees that the trial court awarded to Bentz on the adverse possession claim.

Accordingly, we affirm the trial court's judgment on the merits, but we remand for entry of findings of fact and conclusions of law relating to the trial court's award of attorney fees to Bentz on the adverse possession claim. The attorney fee award must exclude hours related to the prescriptive easement claim.

## FACTS

In 1999, Evelyn and Marshall Colvin acquired lots 20, 21 and 22 on a plat located in Thurston County.[1]  The land was undeveloped except for a cabin on lot 22 that preexisted the Colvins' ownership.  The cabin had one bedroom with no running water and no indoor toilets.

*Drainfield Easement*

In 2004, the Colvins built a three bedroom house on lot 20.  Before construction, the Colvins applied for and obtained approval for the installation of a septic drainfield that would serve the house.  Because lots 20 and 21 had a well and could not have a drainfield located within 100 feet of the well, the Colvins needed to install the drainfield on lot 22.

---

[1] This opinion refers to Evelyn and Marshall Colvin by their first name when referencing them as individuals, and the Colvins when referencing them as a couple.  No disrespect is intended.

During the process of getting the drainfield approved by the Thurston County Health Department, Marshall filled out a "Drainfield Easement Agreement" dated May 28, 2001. Clerk's Papers (CP) at 614. The Colvins were both the grantors and the grantees of the easement and were listed as owning lots 20, 21, and 22. The drainfield was placed on lot 22, which now is the Bentz property, but the agreement recited that the easement was over all three lots. The easement was for the "sole use" of the Colvins and identified lot 22, but also identified all three lots. CP at 614. The agreement stated that there was a "non-exclusive perpetual easement" across lots 20, 21, and 22. CP at 94. This easement was recorded with the Thurston County auditor.

*Connection to Septic System*

The drainfield application only was for the three bedroom house that was to be constructed on lots 20 and 21. The drainfield easement was drafted as required by the County and was being done in conjunction with the Colvins' construction plans for the house. The septic system design notes stated, "Existing cabin is for use while proposed residence is being constructed. When new house construction is complete. The existing cabins needs to be removed. Well site is not acceptable for two party use. The well can only be approved for single family use." CP at 98.

The drainfield was installed sometime in 2001. Marshall had his son connect the cabin to the drainfield. The septic system pumps were powered from the cabin. Marshall also placed the backup/blockage alarms for the septic system on the cabin. The Colvins did not obtain a permit to connect the cabin to the drainfield.

The Colvins got divorced in 2002, but continued to live together in the cabin while the house was being built. During construction of the house on lots 20 and 21, Marshall's son

hooked the house to the drainfield. After the house was completed, the Colvins moved into the house. Marshall built a fence between the newly constructed house and the cabin. The fence extended between the driveway to the cabin and the driveway to the new house.

*Conveyance to Bentz and Conklin*

As part of their divorce, Marshall deeded lots 20, 21, and 22 to Evelyn in 2004. In September 2004, Evelyn deeded lot 22 to Bentz. The deed did not mention any drainfield easement, but the preliminary commitment for title insurance showed the drainfield easement. Evelyn told Bentz that the cabin shared the drainfield with the house on lots 20 and 21. But she did not tell Bentz that there were any potential problems with the cabin's connection to the drainfield. Bentz knew that the septic system was shared and did not consider the shared use to be adverse. Bentz assumed that the Colvins had designed a shared system and that both properties had the right to use and share the drainfield.

In October 2005, Evelyn deeded lots 20 and 21 and the house to Conklin. The deed stated that Conklin's property was sold subject to the drainfield easement. Evelyn did not tell Conklin that the cabin also was connected to the drainfield system. In addition, Evelyn marked on the purchase and sale agreement that the system was a private system as opposed to a shared system.

*Blockage Event*

Conklin and Bentz used the shared drainfield system without incident until there was a blockage event in December 2013, when Bentz's cabin was severely damaged by backed up effluent. Conklin's house sustained no damage. After the blockage event, Conklin demanded that Bentz disconnect the cabin from the drainfield, but she refused.

4

Other than the one blockage event, Conklin and Bentz shared the drainfield system through the time of trial without incident and without any damage to Conklin's property. In addition, the drainfield had functioned properly and there were no complaints of surfacing sewage or offensive odors.

Thurston County deems the present connection of the drainfield system to both the cabin and the house to be a violation of the original permit, and therefore the system presently is noncompliant with the county sanitary code. But the County had not taken any enforcement action at the time of trial.

*Procedural History*

In May 2017, Conklin filed a lawsuit against Bentz. Conklin's first amended complaint stated three cause of actions: (1) quiet title over the entirety of lots 20 and 21 and exclusive access and use of the drainfield, (2) nuisance and trespass, and (3) removal of Bentz's cabin from her property. Bentz asserted a counterclaim for adverse possession to all land and improvements on her side of the fence between the properties and challenged Conklin's use of the septic system. Conklin did not file an answer or reply to the counterclaims.

In June 2018, Conklin amended his complaint and (1) added a prescriptive easement cause of action in the alternative to allow him to continue using the drainfield, (2) removed his claim for removal of Bentz's cabin, and (3) requested reformation of a scrivener's error contained in the drainfield easement agreement related to the tax parcel numbers. Conklin also sought a decree that he had exclusive use of the septic system.

*Cross Summary Judgment*

In December 2018, Bentz filed a summary judgment motion on her adverse possession claim. In Conklin's response, he stated that he did not dispute her adverse possession claim but

requested that the trial court condition entry of partial summary judgment on requiring Bentz to obtain a boundary line adjustment from the County. Bentz's reply challenged Conklin's requested condition.

The trial court granted partial summary judgment in favor of Bentz on her adverse possession claim. The court declined to condition its ruling on Bentz's application to the County for a boundary line adjustment.

*Bench Trial*

At the bench trial in August 2019, several people testified, including Evelyn, a County employee, Bentz, and Conklin. The parties generally testified to the facts stated above.

Conklin testified that the nonconforming drainfield system would have to be disclosed to potential purchasers of his property, potentially decreasing the value of his house. But he also admitted that he never had tried to sell his house since 2013.

The trial court entered into extensive findings of facts and conclusions of law, dismissing Conklin's prescriptive easement and nuisance claims, denying Conklin's requested injunctive relief, and finding an implied easement based on prior use.

Relevant to the implied easement claim, the trial court found that (1) disconnection of the cabin from the drainfield would have had a devastating effect on the value and usability of Bentz's cabin because it would have no waste disposal system, (2) the hardship on Bentz's lot from any disconnection would be grossly disproportionate to the benefit to the Conklin property, and (3) the drainfield was reasonably necessary to the use of both Conklin and Bentz's property.

Relevant to the nuisance claim, the trial court found that Conklin expressed legitimate concerns regarding future enforcement and the possible effect of the noncompliance with a

future sale. But the court also found that Conklin's actual use and enjoyment of his property had not been in any way affected by the shared drainfield system.

The trial court also found that Bentz purchased lot 22 with the understanding that the drainfield was shared, and given the shared drainfield was beneficial to herself and her property, the use of the drainfield by Conklin was expected and not adverse. The court found that the use of the drainfield was established while there was common ownership under the Colvins, but that the use was severed by the sale to Bentz. Therefore, Conklin's use of the drainfield had been continuous since 2005 to the present and was reasonably necessary for his use and enjoyment of his property.

The trial court found that Bentz was the substantially prevailing party.

*Attorney Fees*

Bentz filed a motion for the award of attorney fees both for her adverse possession claim and for defending against Conklin's prescriptive easement claim. She requested attorney fees and costs in the total amount of $34,848.17. Her attorney submitted a declaration in support of the motion for attorney fees and costs with a number of exhibits that primarily consisted of time entries and status reports. Her attorney estimated that the total attorney fees for the entire case were $67,038.43. Conklin opposed the award of any attorney fees, arguing that a fee award was not appropriate for the adverse possession claim because he did not oppose that claim and that the law did not allow the award of fees on the prescriptive easement claim.

The trial court orally ruled that it was awarding attorney fees to Bentz as the prevailing party on both the adverse possession and prescriptive easement claims. The court found that Bentz's attorney's hourly rate and amount of fees were reasonable. The court awarded Bentz

$26,765 in attorney fees and $2,149.68 in costs for a total judgment amount of $28,914.68. The court only made the following findings:

> 2.   The court has reviewed the attorney fee affidavit and supporting documentation submitted by Attorney Martin Burns;
>
> 3.   The court has reviewed a response re attorney's fees from the Plaintiff, as well as their supporting documentation;
>
> 4.   The court finds that the attorney fees and costs that were incurred by Burns Law, PLLC, on behalf of the prevailing Defendant to be reasonable and in accordance with community norms;

CP at 610.

Conklin appeals the trial court's award of attorney fees and the trial court's judgment.

ANALYSIS

A.    IMPLIED EASEMENT FOR JOINT USE

Conklin argues that the trial court erred in recognizing an implied easement for joint use of the drainfield system instead of enforcing the express easement that he claims granted him exclusive use of the system. We disagree.

1.    Legal Principles

"An easement is a nonpossessory right to use the land of another." *McColl v. Anderson*, 6 Wn. App. 2d 88, 92, 429 P.3d 1113 (2018). The easement holder, or the dominant estate owner, has property interest in the land subject to an easement, also known as the servient estate. *Zonnenbloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 183, 401 P.3d 468 (2017). The easement represents a burden on the servient estate. *Id.* at 184. The dominant estate owner has a property interest that is separate from ownership of the land. *McColl*, 6 Wn. App. 2d at 92. A person who acquires the servient estate takes title subject to any easements if the person has actual, constructive, or implied notice of the easement. *Johnson v. Lake Cushman Maintenance*

*Co.*, 5 Wn. App. 2d 765, 778, 425 P.3d 560 (2018). Recording the easement provides constructive notice. *Hanna v. Margitan*, 193 Wn. App. 596, 606, 373 P.3d 300 (2016).

However, a person cannot have an easement in his or her own property. *Coast Storage Co. v. Schwartz*, 55 Wn.2d 848, 853, 351 P.2d 520 (1960); *Johnson*, 5 Wn. App. 2d at 778. Therefore, an easement is extinguished if the same person owns both the dominant and the servient estates. *Johnson*, 5 Wn. App. 2d at 778. This is known as the doctrine of merger. *Schlager v. Bellport,* 118 Wn. App. 536, 539, 76 P.3d 778 (2003). For the same reason, the grantor and the grantee of an easement cannot be the same person. *See Johnson*, 5 Wn. App. 2d at 778 n.7; *see also* 17 WILLIAM B. STOEBUCK & JOHN WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 2.1 at 83 (2d ed. Supp. 2020) (stating the principle that "a grantor cannot grant an easement in favor of herself where she owns what would be both the dominant and servient parcels").

Courts generally disfavor applying the merger doctrine. *Radovich v. Nuzhat*, 104 Wn. App. 800, 805, 16 P.3d 687 (2001). An exception to the merger doctrine applies when the party who acquires both the dominant and servient estate " 'does not intend such a merger to take place, or where it would be inimical to the interest of the party in whom the several estates have united' " or when a merger " 'would prejudice the rights of innocent third persons.' " *Id.* (quoting *Mobley v. Harkins*, 14 Wn.2d 276, 282, 128 P.2d 289 (1942)).

A trial court has broad discretion to fashion equitable remedies. *Carbon v. Spokane Closing & Escrow, Inc.,* 135 Wn. App. 870, 878, 147 P.3d 605 (2006). We review a trial court's equitable remedies for abuse of discretion. *Ames v. Ames*, 184 Wn. App. 826, 850, 340 P.3d 232 (2014).

9

2.  Invalidity of Drainfield Easement

Conklin agrees with the trial court's determination in conclusion of law 5 that an implied easement was equitable. However, he argues that an implied easement cannot circumvent a written, express easement and absent an explicit ruling on merger, the express easement remains valid. He states that the trial court should have inquired into whether the Colvins intended to maintain the purported express easement as a possessory interest separate and independent from their ownership interest.

Here, the drainfield easement agreement lists the Colvins both as the grantors and the grantees. And the Colvins recorded the drainfield easement agreement while they owned lots 20, 21, and 22. As a result, no valid easement was created. *Johnson*, 5 Wn. App. 2d at 778 & n.7; STOEBUCK & WEAVER, § 2.1 at 83. A person cannot have the same rights twice in the form of ownership interest and a separate possessory interest through an easement. *See McColl*, 6 Wn. App. 2d at 92; STOEBUCK & WEAVER, § 2.12 at 120 ("[A]n owner, whose title encompasses all the rights included within the easement, simply cannot own the same rights twice."). Accordingly, the trial court's finding of an implied easement did not circumvent a valid written, express easement.

Conklin argues that no merger of the easement occurred here based on the exception to the merger doctrine referenced above because the Colvins did not intend that a merger occur. He emphasizes that the County mandated that the Colvins create the easement for the purpose of ensuring that any future owner of the house would have the right to use the septic system.

However, the cases stating that a merger can be avoided involve a validly created easement where the same person *subsequently* becomes the owner of both the dominant and servient estates. *See WT Properties, LLC v. Leganieds, LLC*, 195 Wn. App. 344, 347, 382 P.3d

31 (2016); *Radovich*, 104 Wn. App. at 802, 805. Here, the easement was invalid from its inception. Because the Colvins owned all the lots at issue, they could not legally create an easement on their own property. *Johnson*, 5 Wn. App. 2d at 778. Conklin cites no authority for the proposition that the intent of the grantor/grantee can somehow create a valid easement in this situation.

We hold that the trial court did not err in finding an implied easement rather than enforcing the Colvins' express easement.[2]

B.     NUISANCE CLAIM

Conklin argues that the trial court erred in dismissing his nuisance claim because Bentz's nonconforming connection to the septic system impacts his future ability to improve his property or to sell it for the highest value possible. We disagree.

1.     Legal Principles

"A nuisance is a substantial and unreasonable interference with the use and enjoyment of another person's property." *Kitsap County v. Kitsap Rifle and Revolver Club*, 184 Wn. App. 252, 276, 337 P.3d 328 (2014). The legislature codified the law of nuisance in chapter 7.48 RCW. *Id.* RCW 7.48.010 defines an actionable nuisance as "whatever is injurious to health . . . or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property." RCW 7.48.120 further defines nuisance as an "act or omission [that] either annoys, injures or endangers the comfort, repose, health or safety of others . . . or in any way renders other persons insecure in life, or in the use of property." The plaintiff

---

[2] Conklin also argues that the express easement established exclusive use of the septic system for his benefit only. Because we hold that the express easement was invalid, we do not address this argument. In addition, Conklin challenged the trial court's finding that Bentz was a good faith purchaser. In light of our holding, this issue is immaterial.

bears the burden to show that the defendant's action actually results in a nuisance as provided in chapter 7.48 RCW. *See Cheney v. City of Mountlake Terrace*, 87 Wn.2d 338, 347, 552 P.2d 184 (1976).

If a particular action interferes with the comfort and enjoyment of others, nuisance liability exists only when the action is unreasonable. *Kitsap Rifle*, 184 Wn. App. at 276. Whether a defendant's action is unreasonable requires balancing the harm of the aggrieved party against the social utility of the activity. *Id.* at 276-77. Whether a nuisance exists usually is a question of fact. *Id.* at 277.

2.  Analysis

Regarding his nuisance claim, Conklin assigns error only to finding of fact 30, which states, "While Conklin expressed legitimate concerns regarding future enforcement and possible effect of the noncompliance with a future sale, Conklin has not suffered actual and substantial injury to date." CP at 616. The unchallenged findings are verities on appeal. *Kitsap Rifle*, 184 Wn. App. at 267.

Conklin argues that he articulated cognizable damages because the County will deny any future applications for building permits or land use development and that he will not be able to sell the house in the future for the highest value because he would need to disclose the nonconforming connection to all buyers.[3] But there is substantial evidence in the record to support the finding that Conklin had not sustained any actual injury because of Bentz's use of the septic system.

---

[3]Conklin also argues that even in the absence of any measurable monetary damages, he is entitled to abate the nuisance by terminating Bentz's connection to the septic system. But he does not cite to any authority to support this proposition and the trial court's findings do not support such a harsh remedy at this juncture.

First, the record shows that Conklin's house never had suffered any physical damages from the shared drainfield. In fact, the blockage event in December 2013 was the first and only incident to occur since Bentz purchase lot 22 in 2004 and Conklin purchased lot 20 and 21 in 2005. Excluding the blockage event, the drainfield had functioned properly and there had been no complaints of any surfacing sewage or offensive odors.

Second, the evidence showed that the County could take a variety of enforcement actions against the noncompliant septic systems, such as sending a notice to the homeowner, directing them to take some type of corrective action, or at the most extreme end, ordering a property to be vacated. But at the time of trial, the County had not issued a noncompliance status on the property pending the outcome of this lawsuit. County employees never stated which action, if any, it would take after the lawsuit has ended.

Third, Conklin never testified that he planned to make improvements to or further develop his property. He did testify that he may need to sell his house at some time in the future because of his health. But he provided no specific plans and it is undisputed that he had not attempted to sell his property. In fact, the trial court found that Conklin attempted to purchase Bentz's property between 2016 and 2017 and did not make a reasonable offer in good faith.

Finally, Conklin provided no evidence that the value of his house had been diminished because of Bentz's use of the drainfield. Therefore, Conklin's claim that he could not obtain full value if he sold the house is speculative.

Conklin has the burden to show that Bentz's connection to the drainfield substantially and unreasonably interfered his ability to use and enjoy his property. *See Kitsap Rifle*, 184 Wn. App. at 276. But the trial court made an unchallenged finding that the actual use and enjoyment

13

of his property has not in any way been affected by the shared system. Therefore, we hold that the trial court did not err when it dismissed the nuisance claim.

C.     ATTORNEY FEES FOR PRESCRIPTIVE EASEMENT CLAIM

Conklin argues that the trial court erred in awarding attorney fees to Bentz for defending against his prescriptive easement claim under the plain language of RCW 7.28.083(3) and this court's holding in *McColl*. We agree.

1.     Legal Principles

RCW 7.28.083(3) provides, "The prevailing party *in an action asserting title to real property by adverse possession* may request the court to award costs and reasonable attorneys' fees. The court may award all or a portion of costs and reasonable attorneys' fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just." (Emphasis added.)

In *McColl*, this court held that RCW 7.28.083(3) did not authorize an attorney fee award on a prescriptive easement claim because such a claim was not "an action asserting title to real property." 6 Wn. App. 2d at 89. The court stated:

> An easement is an interest in real property. However, that interest involves the *use* of property and does not grant *title* to the property. Similarly, an easement represents a burden on the property subject to the easement. But again that burden does not provide *title* to the property. Unlike adverse possession, a prescriptive easement does not quiet title to land.

*Id.* at 92 (citations omitted). The court concluded, "Because a prescriptive easement claim does not actually assert title to property, RCW 7.28.083(3) does not apply to McColl's prescriptive easement lawsuit." *Id.* at 92-93.

The holding in *McColl* is consistent with the settled rule that an easement is a property right that is separate from ownership. *Johnson*, 5 Wn. App. 2d at 778.

14

A few weeks later after *McColl* was issued, Division One of this court reached the opposite conclusion in *Workman v. Klinkenberg*, 6 Wn. App. 2d 291, 305-06, 430 P.3d 716 (2018). The court's entire analysis was as follows:

> [RCW 7.28.083(3)] uses the term "adverse possession," and this case involves both adverse possession and prescriptive easements. Because these doctrines "are often treated as equivalent[s]" and the elements required to establish adverse possession and prescriptive easements are the same, this statute allows recovery for fees incurred on prescriptive easement claims.

*Id.* (quoting *Kunkel v. Fisher*, 106 Wn. App. 599, 602-03, 23 P.3d 1128 (2001)). The court did not mention *McColl*.

None of the parties from *McColl* or *Workman* sought review in the Supreme Court.

2. Analysis

We follow *McColl*. This court in *McColl* focused on the statutory language, which unequivocally states that an attorney fee award must be based on "an action asserting title to real property." RCW 7.28.083(3). There is no question that an easement does not involve title to real property. *Graves*, 173 Wn.2d at 936. The court in *Workman* failed to recognize the distinguishing difference between adverse possession and prescriptive easement – obtaining title to real property as opposed to obtaining the right to use another's property. Instead, that court focused only on whether a prescriptive easement claim fell within the meaning of "adverse possession." As a result, *Workman* rendered the phrase "asserting title to real property" in RCW 7.28.083(3) superfluous.

Relying on *Union Bank, N.A. v. Vanderhoek Associates, LLC*, 191 Wn. App. 836, 365 P.3d 223 (2015), Bentz argues that we should apply an abuse of discretion standard, and defer to the trial court's decision to follow Division One's holding in *Workman* over Division Two's holding in *McColl*. But we do not defer to the trial court on questions of law.

Under *McColl*, RCW 7.28.083(3) does not authorize the award of attorney fees for a prescriptive easement claim. Accordingly, we hold that the trial court erred in awarding attorney fees to Bentz for defending Conklin's prescriptive easement claim.

D.    ATTORNEY FEES FOR ADVERSE POSSESSION CLAIM

Conklin acknowledges that RCW 7.28.083(3) allows the recovery of attorney fees for adverse possession claims. However, he argues that (1) the trial court erred in awarding Bentz attorney fees because he did not dispute the adverse possession claim and (2) the trial court failed to make sufficient findings to support the attorney fee award. We disagree with the first argument but agree that the trial court's findings were inadequate.

1.    Legal Principles

Trial courts must actively assess the reasonableness of all attorney fee awards and cannot simply accept the amounts stated in fee affidavits. *Berryman v. Metcalf*, 177 Wn. App. 644, 657, 312 P.3d 745 (2013). Under the lodestar method, the trial court considers the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate to determine the amount of attorney fees to award. *Mahler v. Szucs*, 135 Wn.2d 398, 434, 957 P.2d 632 (1998). The court excludes time that is wasteful or duplicative and time spent on unsuccessful theories or claims. *Id.*

The reasonableness of an attorney fee award is subject to a review for an abuse of discretion. *White v. Clark County*, 188 Wn. App. 622, 638, 354 P.3d 38 (2015). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Id.* at 638-39.

When a trial court awards attorney fees, it must articulate the grounds on which it is basing its decision, thereby creating a record sufficient to permit this court to conduct a

meaningful review. *Mahler*, 135 Wn.2d at 435. This means that the trial court "must supply findings of fact and conclusions of law sufficient to permit a reviewing court to determine why the trial court awarded the amount in question." *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 144, 331 P.3d 40 (2014); *see also Mahler*, 135 Wn.2d at 435.

The findings must show that the trial court did more than unquestioningly accept counsel's fee affidavit. *See Berryman*, 177 Wn. App. at 658. Generally, the findings must show that the court "actively and independently confronted the question of what was a reasonable fee," including what objections the court considered, any resolution of disputed factual issues, and the reasoning behind the court's analysis. *Id.* If the trial court does not make adequate findings of fact and conclusions of law supporting the attorney fee award, the preferred remedy is to remand for entry of more comprehensive findings and conclusions. *Id.* at 659.

### 2. Disputed Claim

Conklin argues that the trial court erred in the amount of attorney fees awarded for time spent pursing claims that did not need to be pursued, specifically the adverse possession counterclaim. We disagree.

Conklin suggests that under CR 8(d), his failure to deny the allegations in Bentz's adverse possession counterclaim constitutes evidence that Bentz spent wasteful hours litigating a matter that he already had conceded. In addition, he points to his admissions to Bentz's requests for admissions as evidence that he was not disputing Bentz's adverse possession counterclaim. Therefore, he claims that most, if not all, of the hours that Bentz spent litigating the adverse possession counterclaim at summary judgment were wasteful.

However, the record shows that Conklin and Bentz were not in full agreement regarding the adverse possession issue before the summary judgment hearing. The record suggests that the

17

parties failed to resolve the issue during mediation before the summary judgment hearing. More importantly, Conklin conditioned his alleged concession on adverse possession by asking the trial court to require Bentz to submit an application to the County for a boundary line adjustment, which is not a true concession. And Bentz opposed Conklin's proposed condition, which the court declined to impose as part of its summary judgment order on adverse possession.

In addition, in Conklin's second amended complaint, which was filed after he responded to Bentz's prior counsel's requests for admissions, he asserted claims to exclude Bentz from lots 20 and 21 without any references to Bentz's adverse possession counterclaim. Therefore, it cannot be said that *all* of the hours that Bentz's attorney spent on the adverse possession issue were completely wasteful.

We conclude that the trial court did not err by awarding Bentz some amount of attorney fees for her adverse possession claim.

3.    Inadequate Findings

Conklin argues that the trial court failed to provide sufficient findings regarding the amount of attorney fees awarded, and therefore we should remand for the trial court to make such findings. We agree.

The trial court made an oral finding that Bentz's attorney's hourly rate was reasonable for the work performed, satisfying the second part of the lodestar analysis. *See Mahler*, 135 Wn.2d at 434. Conklin does not dispute this finding.

However, the trial court made no findings regarding how it determined the amount of fees awarded. The court did not identify the number of hours related to the adverse possession claim, the prescriptive easement claim, and other claims for which attorney fees were not recoverable, or make a finding that certain fees could not be segregated. And the court did not

18

state whether the time spent was reasonable as opposed to duplicative or wasteful, especially in light of the fact that Conklin did not completely dispute the adverse possession claim. The court made no findings at all except the bare conclusion that the fees Bentz's attorney incurred were reasonable.

The lack of findings is significant here, because we hold above that Bentz was not entitled to attorney fees for defending Conklin's prescriptive easement claim. On remand, the trial court must remove any fees related to that claim from the attorney fee award.

Further, RCW 7.28.083(3) specifically authorizes the trial court in its discretion to award costs and reasonable attorney fees when the "award is equitable and just." The trial court made no finding or conclusion that the fee award was equitable and just.

We conclude that the trial court's findings are insufficient and do not permit us to discern how it determined the amount of fees awarded. Therefore, we remand for the trial court to enter findings regarding the number of hours spent on the adverse possession claim, reasonableness of the time spent, and what fees it found were equitable and just.

E. ATTORNEY FEES ON APPEAL

Bentz requests that this court award attorney fees on appeal for time related to the adverse possession claim under RAP 18.1 and RCW 7.28.083(3). Bentz and Conklin each prevailed on one of the two issues regarding the attorney fees awarded on the adverse possession claim. Therefore, neither is the prevailing party on the issue of adverse possession. *Seashore Villa Ass'n v. Hugglund Family Ltd. Partnership*, 163 Wn. App. 531, 547, 260 P.3d 906 (2011). We decline to award attorney fees to Bentz.

CONCLUSION

We affirm the trial court's judgment on the merits, but we remand for entry of findings of fact and conclusions of law relating to the trial court's award of attorney fees to Bentz. The attorney fee award must exclude hours related to the prescriptive easement claim.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

LEE, C.J.

CRUSER, J.

20